TEXAS & P. RY. CO. v. BELCHER et al.
(No. 2306.)

(Court of Civil Appeals of Texas. Texarkana.
Dec. 7, 1920. Rehearing Denied Dec. 23,
1920.)

1. **Adverse possession** ⬯60(6) — **Lease to grantor of property not included in description does not show permissive use by grantee.**

A lease by railway company to the remote grantor of the owner of a lot adjoining right of way, of a small strip adjacent to the lot, does not show that the possession of that strip by the subsequent owners was permissive under the lease, where it was not included in the description in the deeds to them and there was no evidence that they had knowledge of its existence.

2. **Adverse possession** ⬯8(4) — **Statute does not exempt railway right of way.**

Rev. St. 1911, art. 5683, exempting from acquisition by adverse possession roads, streets, etc., belonging to town, city, or county, or which have been dedicated in any manner to public use, does not prevent the acquisition of title by adverse possession to a portion of railroad right of way, since that article was amended after there were extensive railway holdings to meet the construction theretofore placed on it as permitting adverse possession to give title against cities, counties, and towns, and, if railway rights of way had been intended to be included, they could have been expressly mentioned.

3. **Adverse possession** ⬯8(4) — **Public policy does not require exemption of railroad right of way.**

Since public policy, in the absence of statute, does not prevent acquisition of rights of way to highways by adverse possession, it does not prevent the acquisition of railway rights of way in that manner.

Appeal from District Court, Gregg County;
Chas. L. Brachfield, Judge.

Suit between the Texas & Pacific Railway Company and J. E. Belcher and others to determine the title and possession of a tract of land. From a judgment awarding possession to Belcher, the railway company appeals. Affirmed.

Young & Stinchcomb, of Longview, for appellant.

F. B. Martin and W. E. Beall, both of Longview, for appellees.

HODGES, J. This suit involves the title and possession of a small lot in the city of Longview, 23 by 135 feet. It is a part of the appellant's right of way as originally conveyed to it in 1887. The appellee claims title by limitation based upon adverse possession for more than 10 years.

The facts show that in April, 1908, the appellee acquired from W. M. Mattison title by deed to a lot adjoining the appellant's right of way on the north, 77½ by 135 feet.

At the time that conveyance was made to Belcher, the inclosure around the land described in the field notes in the deed also included the strip in controversy. It appears that either Mattison or R. G. Scott, his grantor, had extended the fence south far enough to inclose that much of the appellant's right of way. No objection was made at the time, because that portion of the land was not needed for railway purposes. The appellee testified that he purchased from Mattison the lot adjoining the appellant's right of way in 1908; that at the time of the purchase the land in controversy was inclosed with the land described in this deed; that he had used the lot as his residence continuously since about two months after the purchase; that it had been during that time inclosed with a fence; that he had planted shade trees many years ago upon that portion of the land now claimed by the appellant. He had never measured his lot to see whether or not it was all included in his deed. He did not know of any claim by the railway company until a short time before this suit was filed. There was a highway running along between his inclosure and the railway right of way, which was used by the public and had been worked by the city. Appellant proved that in 1903 a written lease by its agents had been executed, wherein appellant as lessor leased to one R. G. Scott that part of the railway right of way inclosed by the fence of Scott on the north side of the railway track and about 1,600 to 1,800 feet east of the railway depot at Longview. The lease provided that it was nominally for a term of one year, but that it was understood its duration was at the option of the lessor and could be terminated at any time by the lessor's giving the lessee 60 days' notice in writing of its intention to cancel the lease. It also provided that the lessee agreed to vacate the property within 60 days after receiving such notice. In a trial before a jury, in which the court submitted special issues, judgment was rendered in favor of the appellee Belcher for the title and possession of the land.

[1] It appears from the findings of the jury and the court that Belcher's title is founded upon limitation alone. The appellant relies upon the lease to establish a permissive use, which could not ripen into a title by limitation. Assuming that the lease included this lot, it cannot be said from the record before us that it covered a longer period than one year from its date. The instrument itself is not in the statement of facts, and we have quoted the entire substance there given. But if it were otherwise, neither the deed from Scott to Mattison nor that from Mattison to Belcher conveyed any rights to the leased land. Hence it cannot be said from that evidence that Belcher was using the property by virtue of the terms of the lease. There is nothing in the record to in-

dicate that he had actual knowledge of the existence of such a lease.

[2] Appellant also relies upon the proposition that, the land in controversy being a part of its right of way, the title thereto could not be lost by limitation to an adverse claimant. In support of that proposition we are referred to article 5683, Revised Civil Statutes, which is as follows:

"The right of the state shall not be barred by any of the provisions of this chapter, nor shall any person ever acquire, by occupancy or adverse possession, any right or title to any part or portion of any road, street, sidewalk or grounds which belong to any town, city or county, or which have been donated or dedicated for public use to any such town, city or county by the owner *thereof, or which have been laid out or dedicated in any manner to public use in any town, city or county in this state;* provided, this law shall not apply to any alley laid out across any block or square in any city or town."

The portion italicized is relied on as conferring the particular immunity claimed in this instance. To give the language used in that article so comprehensive a meaning would, we think, go beyond what the Legislature intended. The article quoted is an amendment adopted in 1887 for the purpose of extending immunity from the statutes of limitation to lands held for public use by counties and cities, and to all that class of property the title to which was not invested in either a city or county, but was set apart and dedicated to public use; that is, used by the public. In the last-mentioned class may be included parks, pleasure resorts, plazas, public squares, and the like. Prior to that amendment the courts had limited this exemption from the statute of limitation to the state and those agencies asserting the right of the state. They went so far as to exclude cities and counties from those exemptions. Under those rulings, highways and streets dedicated to public use could be lost to private individuals and corporations by limitations. Mayor, etc., of Galveston v. Menard, 23 Tex. 349; Ostrom v. City of San Antonio, 77 Tex. 345, 14 S. W. 66; Mellinger v. Houston, 68 Tex. 40, 3 S. W. 250; Galveston v. Williams, 69 Tex. 454, 6 S. W. 862. Many other cases to the same effect might be cited. It was to prevent such results that the amendment was adopted. At that time there were extensive railway holdings in this state; and, had the Legislature intended to extend this protection to that class of property, it is more than likely that specific mention would have been made of property used by railway corporations for public purposes. For a holding contrary to this view, we are referred to decisions in other states, some of which base their rulings upon the language of special statutes. Without access to those local constitutional and statutory provisions, we are unable to determine whether or not we differ with those courts upon the principles involved.

[3] In answer to the proposition that since a railway right of way is a public highway and should, as a matter of public policy, be protected from the danger of being lost by adverse occupancy, it is sufficient to say that no such liberality was heretofore extended to streets and other public highways prior to the enactment of the amendment of 1887; yet the loss of those highways would detrimentally affect the public in the same manner which results from the loss of a railway right of way. Railroad corporations may protect themselves against the encroachments of trespasses which in the course of time ripen into an adverse title.

Moreover, the property when lost in that way can, if needed for railway purposes, be reacquired under the right of eminent domain. There is therefore no such public necessity for the exemption claimed as would require judicial interference in the absence of a statute.

The judgment is affirmed.

⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes