## GULF, COLORADO & S. F. RY. CO. v. CANDLER.

### No. 1424—6048.

Commission of Appeals of Texas, Section B.
June 24, 1933.

Terry, Cavin & Mills, of Galveston, W. P. Donalson, of Dallas, and Lee, Lomax & Wren and Wren, Pearson & Jeffrey, all of Fort Worth, for plaintiff in error.

Crane & Crane and Pat H. Candler, all of Dallas, for defendant in error.

RYAN, Judge.

Candler, on February 14, 1927, filed this suit in the district court of Dallas county against the Gulf, Colorado & Santa Fé Railway Company in trespass to try title for the recovery of a certain tract of land included within the right of way claimed by the railway company. A jury was waived, and judgment rendered by the trial court in Candler's favor, which was affirmed by the Court of Civil Appeals. 40 S.W.(2d) 915.

The facts agreed to by the parties are substantially as follows:

(1) By deed dated October 24, 1879, W. C. Young, Sr., the common source of title, acquired a tract of land containing about seventy-five acres, of which that in controversy is a part.

In May, 1881, in a condemnation proceeding instituted against him by the Chicago, Texas & Mexican Central Railroad Company, Young was awarded the sum of $750 and costs, and "all his right, title and interest in and to" a strip of land 200 feet wide through his larger tract, "divested out of him and fully and completely vested in said Chicago, Texas and Mexican Central Railway Compa-

ny." Said condemnation proceedings were regular in every respect, and the award and all costs were promptly paid to him by the company. Later the Gulf, Colorado & Santa Fé Railway Company acquired all the rights and franchises of the Chicago, Texas & Mexican Central Railroad Company, including the above right of way, and constructed two lines of railroad along approximately the center thereof, no part of said lines, however, being on or over the strip of land in controversy which lies between a line 50 feet from and parallel to the center line of the 200-foot strip and the west line of said strip.

(2) The claim or title to the land in question upon which the railway company relies is by and through said condemnation proceedings, and no use or effort to use said strip was made by the railway company until about the time this suit was filed, more than forty-five years after such condemnation proceedings were had.

(3) Shortly after the conclusion of said condemnation proceedings, said W. C. Young entered into physical possession of the strip in controversy (which included fifty feet of the right of way adjudged to the company in the condemnation proceedings), inclosed it in a substantial fence, and continuously cultivated, used, and enjoyed same from that time until 1907; his possession was open and notorious during said period, and he claimed said land as his property. On April 3, 1907, Young, his then wife, and children of his deceased former wife, by general warranty deed conveyed to Victor H. Hexter, and through mesne conveyances, each a general warranty deed, Candler on October 3, 1914, acquired said property in controversy.

(4) The claim or title relied upon by defendant in error, Candler, is through said conveyances and title by limitations in W. C. Young, and it was agreed that, if limitation title can be acquired to its right of way which was so vested in defendant railway company under the above condemnation decree, then plaintiff, Candler, and his predecessors in title have acquired such title. That is to say, plaintiff and his predecessors in title have had physical possession of the tract of land in dispute, under fence, and have cultivated, used, and enjoyed same, and paid the taxes thereon, for more than the full period of ten years prior to the filing of this suit, though the defendant insists that such possession has not been adverse as against the easement only which it asserts over and across the same under said judgment in condemnation.

The trial court concluded that, if limitation title can be acquired to the right of way vested in defendant under the condemnation decree, then plaintiff and his predecessors in title have acquired title by limitations. That is to say, plaintiff and his predecessors in title have had physical possession of the tract

of land in dispute, under fence, and have cultivated, used, and enjoyed same and paid the taxes thereon for more than the full period of ten years prior to the filing of this suit.

It is the contention of the company that under the statutory law of this state a railroad company in condemnation proceedings acquires only an easement in the land condemned, and, as the fee to the land remains in the owner subject to such easement, the possession, use, and cultivation by the owner until the railroad company may take it over is not hostile or adverse and cannot ripen into title unless there be actual notice to the railroad of the hostile claim; the company contends further that no such notice was given, and therefore there is no title by limitation in Candler.

■ If the possession by Young, after condemnation by the railway company, was peaceable and adverse, then, under the statute, it operates as well against railroad corporations as against individuals, and this rule applies as well to an easement as to a title in fee. The right to an easement may be lost by limitations the same as a title in fee. Texas & P. Ry. Co. v. Maynard (Tex. Civ. App.) 51 S. W. 255 (writ of error refused); Texas & P. Ry. Co. v. Belcher (Tex. Civ. App.) 226 S. W. 471; Ft. Worth & D. Ry. Co. v. Western Stockyards Co. (Tex. Civ. App.) 151 S. W. 1172 (writ of error refused); Gulf, C. & S. F. Ry. Co. v. Bryant (Tex. Civ. App.) 204 S. W. 443 (writ of error refused).

■ The company's easement, as correctly stated by the Court of Civil Appeals, contemplated that its possession of the land, when used for railroad purposes, should exclude any obstruction or use by the owner of the fee, and, when Young erected his fence under a hostile claim, this operated an ouster of the company, and set in motion the statute of limitations (Rev. St. 1925, art. 5510).

We think the case was correctly decided, and therefore recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.