**Charles SEBER and Barbara Seber, Appellants,**

v.

**UNION PACIFIC RAILROAD COMPANY, Appellee.**

No. 14–10–00195–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 16, 2011.

Ben A. Baring, Jr., Houston, for appellants.

Earnest W. Wotring, Glenda Hobbs Kirsch, David George, Houston, for appellee.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

WILLIAM J. BOYCE, Justice.

Charles and Barbara Seber sued Union Pacific Railroad Company contending that it wrongfully removed the Sebers' private railroad crossing. The trial court granted summary judgment in favor of Union Pacific. We affirm in part, reverse in part, and remand to the trial court.

## BACKGROUND

This dispute centers on the closing of a private crossing over Union Pacific's railroad right-of-way, which runs along the entire southern boundary of the Sebers' property. Before it was closed, the crossing allowed access between the Sebers' property and Hufsmith–Kuykendahl Road on the opposite side of the railroad right-of-way. The Sebers' property is landlocked along its northern and eastern boundaries. The western boundary abuts Stuebner–Airline Road. This litigation involves the title history of a formerly distinct 1.5 acre tract that is now part of the larger parcel of land owned by the Sebers, and for which the crossing allegedly was constructed.

We recite these facts to explain generally how the Sebers came to own the 1.5 acre tract. Some facts are disputed by the parties, but any such factual disputes are immaterial to the resolution of this appeal. We express no opinion on whether this account of the title history, which is constructed from the affidavits and property records attached to the parties' summary judgment filings in the record, is completely accurate as a legal matter.

## I. Title History

In 1902, the International and Great Northern Railroad Company acquired by condemnation a portion of the railroad right-of-way in question, together with a tract of about 1.5 acres adjoining the

northern side of the right-of-way. Union Pacific does not dispute that it is the successor in interest to this entity. The right-of-way and adjoining 1.5 acre tract were acquired for the "maintenance, construction and operation" of a railroad and "for the purpose of laying out and using side tracks, switches, turnouts and for the erection and maintenance of section houses, depot buildings and other structures thereon."

The 1.5 acre tract was used for a railroad section house, and a crossing was constructed over the railroad right-of-way to permit access between the otherwise landlocked 1.5 acre tract and Hufsmith–Kuykendahl Road. The 1.5 acre tract subsequently was severed from the remaining property that had been condemned.

The severed 1.5 acre tract was conveyed to a number of different owners until 1981, when it became part of a larger tract owned by Jo–Way Tool Company. After that point, the larger tract was conveyed to various owners until the Sebers acquired it in 1992.

Union Pacific advised the Sebers in a letter dated May 16, 2008 that the private crossing would be closed permanently. Union Pacific thereafter closed the crossing.[1]

## II. Procedural Background

The Sebers filed suit on October 30, 2008, alleging that removal of the crossing was "wrongful, constituted a trespass, and was done in derogation of the vested rights of the Sebers." The Sebers sought a declaratory judgment that they are entitled to use the crossing as a right by deed and a mandatory injunction requiring Union Pacific to replace the crossing. The Sebers alternatively sought monetary damages, including exemplary damages, for (1) inverse condemnation of their right to use the crossing; and (2) Union Pacific's interference with their "vested property rights."

Union Pacific filed a "Motion for Summary Judgment" on December 14, 2009, in which it contended that the Sebers cannot prevail in this suit because (1) the Sebers have no legal right to use the crossing; (2) Union Pacific's railroad right-of-way entitles it to exclude the Sebers; (3) the Sebers' claims are preempted by federal law; (4) the Sebers' trespass claim fails as a matter of law; and (5) the Sebers cannot obtain exemplary damages.

The Sebers filed a partial summary judgment motion invoking the traditional summary judgment standard, in which they argued that (1) the deed conveying the 1.5 acre tract from Union Pacific's predecessor in interest to the Sebers' predecessor in title also conveyed the "right to use" the crossing as an "appurtenance" to the property; and (2) Union Pacific is estopped by deed from denying the conveyance of the crossing.

The trial court signed an order on January 26, 2010 granting Union Pacific's December 14 summary judgment motion without specifying the grounds upon which the trial court acted. The January 26, 2010 order is final and appealable because it resolves all claims asserted by the Sebers against Union Pacific. *See Lehmann*

---

1. Union Pacific manager Doug Woods explained at his deposition: "[A] crossing usually consists of some type of planking surface, concrete, timber, asphalt, something like that, on top of the track structure. Then there's a roadway approach that touches that. So [in closing a crossing] we would traditionally remove the planking and pull the roadway back to open the ditches up if there are ditches there.... The crossing boards are removed and set either side of the track blocking the crossing. That's all we did at that time."

*v. Har–Con Corp.,* 39 S.W.3d 191, 205 (Tex.2001). The Sebers timely appealed.[2]

## ANALYSIS

The Sebers argue in their first issue on appeal that the trial court erred in granting Union Pacific's December 14 summary judgment motion. The Sebers argue in their second issue that the trial court should have granted their "competing" partial summary judgment motion on the issue of their legal entitlement to use the crossing as an "appurtenance" conveyed by deed.

■■■ An appellate court applies *de novo* review to the grant of a traditional motion for summary judgment, using the same standard that the trial court used in the first instance. *Duerr v. Brown,* 262 S.W.3d 63, 68 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (citing *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005)). A traditional summary judgment motion may be granted if the motion and evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Tex.R. Civ. P. 166a(c), and *Nix-*

*on v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985)). When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, appellants must show that each of the independent arguments alleged in the motion are insufficient to support the order. *Collins v. Allied Pharmacy Mgmt., Inc.,* 871 S.W.2d 929, 932 (Tex. App.-Houston [14th Dist.] 1994, no writ).

In a traditional motion for summary judgment, the movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000) (per curiam). If the movant satisfies this burden, then the burden shifts to the non-movant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). In determining whether a material fact issue exists to preclude summary judgment, we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and re-

---

**2.** Union Pacific also filed a "Motion for No-Evidence Summary Judgment" on December 15, 2009, invoking the no-evidence standard under Rule 166a(i). Union Pacific argued in its December 15 motion that the Sebers could produce no evidence to support (1) injunctive relief; (2) inverse condemnation; (3) trespass; and (4) exemplary damages. The Sebers assume and Union Pacific asserts on appeal that we should review the trial court's order granting summary judgment in light of arguments made by Union Pacific in both its December 14 and December 15 motions. Each motion was accompanied by a different and specific proposed order; one order referenced only Union Pacific's December 14 "Motion for Summary Judgment," and the other order referenced only Union Pacific's December 15 "Motion for No-Evidence Summary Judgment." When a party files summary judgment motions containing both traditional and no-evidence grounds, and the trial court

grants summary judgment without specifying which motion or arguments it relied upon in doing so, we review both motions and all accompanying summary judgment proof. *See Nardini v. Cont'l Airlines, Inc.,* 60 S.W.3d 197, 200–01 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). However, this record clearly demonstrates that the trial court signed only the proposed order accompanying Union Pacific's December 14 summary judgment motion; the signed order shows the same original document filepath and district clerk file stamp as the proposed order that was filed with the motion referenced by specific title in the order. The trial court did not sign the proposed order accompanying the December 15 no-evidence summary judgment motion, and there is no indication in the record that the trial court ruled on it. Accordingly, we review only the arguments that were raised in the December 14 summary judgment motion.

solve any doubts in the non-movant's favor. *Id.; Duerr,* 262 S.W.3d at 68 (citing *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006)).

## I. Union Pacific's December 14 Summary Judgment Motion

In their first issue, the Sebers challenge Union Pacific's summary judgment arguments that (1) the Sebers have no legal right to keep the crossing open; (2) Union Pacific's railroad right-of-way entitles it to exclude the Sebers; (3) the Sebers' claims are preempted by federal law; (4) the Sebers' trespass claim is not viable as a matter of law; and (5) the Sebers cannot obtain exemplary damages. We review separately each challenge to the grounds upon which the trial court could have based its summary judgment. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997) ("A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone.").[3]

### A. Legal Right to Use Crossing

Union Pacific first argued in its December 14 summary judgment motion that "[t]he Sebers have no vested property interest or right in the private crossing." Union Pacific contends that (1) the private crossing was not an "appurtenance" expressly conveyed "by easement or otherwise" to the prior owners of the 1.5 acre tract; and (2) the Sebers cannot establish an implied easement because they "cannot establish that the railroad crossing was

their only means of accessing their Property."

### 1. "Appurtenance"

Union Pacific initially asserted that the relevant deeds make "no reference to a conveyance of any 'rights, privileges and appurtenances' or any reference to an easement." As the Sebers pointed out to the trial court, the deeds state that they convey all "rights, privileges and appurtenances" or all "rights and appurtenances."

The Sebers argue that the crossing is an easement expressly conveyed as an "appurtenance" by the deed between Union Pacific's predecessor in interest and the Sebers' predecessor in title.

■■■ An easement is a non-possessory interest in another's property that authorizes the holder to use that property for a particular purpose. *Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 700 (Tex.2002). An easement does not convey the property itself. *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.,* 750 S.W.2d 868, 871 (Tex.App.-Austin 1988, writ denied). For an easement appurtenant to exist either by implication or in writing, there must be (1) a dominant estate, to which the easement is attached; and (2) a servient estate, which is subject to the use of the dominant estate to the extent of the easement granted or reserved. *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 207 (Tex.1962).

■■■ In determining whether an easement has been granted expressly, we look to the same rules of construction applicable to deeds. *Callejo v. City of Garland,*

---

3. Union Pacific argues on appeal that we may affirm the trial court's judgment because (1) the 1.5 acre tract no longer was being used for its condemned purpose and "reverted back to the original landowner" before Union Pacific's predecessor attempted to convey the property; and (2) Union Pacific's predecessor therefore could not have conveyed any easement over the railroad right-of-way. This argument was not presented to the trial court in Union Pacific's written motion, and we do not consider it on appeal. *See Sci. Spectrum, Inc.,* 941 S.W.2d at 912.

583 S.W.2d 925, 927 (Tex.App.-Dallas 1979, writ ref'd n.r.e.). Generally, a written instrument is required to validly convey an estate in land. *See* Tex. Prop.Code Ann. § 5.021 (Vernon 2003). Subject to some exceptions, a writing also is required to create an easement. *Drye,* 364 S.W.2d at 203.

The Sebers argue that they have a right to use the crossing under *Cox v. Campbell,* 135 Tex. 428, 143 S.W.2d 361 (Tex.1940), and *Moore v. Energy States, Inc.,* 71 S.W.3d 796 (Tex.App.-Eastland 2002, pet. denied), because a conveyance of title to "any and all appurtenances" includes "railroad rights of way" abutting the property. The Sebers contend that Union Pacific's predecessor expressly conveyed the crossing as a "right-of-way" because the crossing abuts the 1.5 acre tract conveyed.

The cited cases do not support this conclusion because (1) the term "right-of-way" as used in *Cox* and *Moore* refers not to a crossing, but rather to the railroad's special easement over the owner's land on which the railroad is constructed and operated; and (2) these cases hold only that title to the center of the land underneath and subject to the railroad right-of-way passes by such a conveyance. *See Cox,* 143 S.W.2d at 366 ("[W]here a deed conveys by specific field notes land abutting on a street or public highway or railroad right of way, it conveys title to the property to the center of the street, public highway, or railroad right of way.... [P]laintiffs in error are entitled to recover the land [to the center of and beneath the railroad right-of-way] in controversy, subject to the rights of the railroad company."); *Moore,* 71 S.W.3d at 798, 800 (determining ownership of strip of land "along, under, and between" a railroad right-of-way and a [public] road; land in question was not expressly reserved in the deed

conveying abutting property and was thus conveyed under rule stated in *Cox* ).

■ The Sebers do not identify and we have not found any authority for the proposition that the use of the term "appurtenances" expressly conveys an easement over an existing railroad crossing. The trial court properly could have concluded that the Sebers do not have a "right to use" the crossing based on the asserted conveyance of an express easement. However, this circumstance does not end our inquiry because the Sebers alternatively argue that they have the right to use the crossing pursuant to an implied easement.

### 2. Implied easement

Even if the private crossing was not an "appurtenance" expressly conveyed as an easement, the Sebers argue on appeal that they can rely on an implied easement to establish a vested property interest or right in connection with the crossing.

We note at the outset that potentially confusing terminology pertaining to implied easements makes it more difficult to identify, apply, and analyze the correct governing framework. Some preliminary discussion is warranted.

#### a. Overview

■ An implied easement is an exception to the rule that easements appurtenant must be created or transferred in writing. *Drye,* 364 S.W.2d at 203. It is "universally recognized" that—"without aid of language in the deed, and indeed sometimes in spite of such language"—the circumstances surrounding an owner's conveyance of part of a previously unified tract of land may cause an easement to arise between the two new parcels. *Mitchell v. Castellaw,* 151 Tex. 56, 246 S.W.2d 163, 167 (1952). Such an implied easement may arise in favor of the parcel granted (an implied grant), or in favor of

the parcel retained by the grantor (an implied reservation). *Id.* "The basis of the doctrine is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration." *Id.*

There are two forms of implied easement in Texas. The first is an easement by necessity, commonly called a "way of necessity." *See, e.g., Koonce v. Brite Estate,* 663 S.W.2d 451, 452 (Tex.1984); *Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 640 (1958). An easement by necessity is implied when the conveyed or retained parcel cannot be accessed except by traveling over the remaining tract of land. *See Koonce,* 663 S.W.2d at 452 (citing *Bains v. Parker,* 143 Tex. 57, 182 S.W.2d 397 (1944)). An easement by necessity has three requirements: (1) unity of ownership of both parcels prior to separation; (2) access must be a necessity and not a mere convenience; and (3) the necessity must exist at the time of severance. *Id.* (citing *Duff,* 311 S.W.2d at 641).

A second type of implied easement is based on prior use of the land and is called an easement implied from a "quasi-easement." *See, e.g., Drye,* 364 S.W.2d at 207–08; *Ulbricht v. Friedsam,* 159 Tex. 607, 325 S.W.2d 669, 676–77 (1959). The Texas Supreme Court has identified the circumstances under which such an easement may be implied:

> If an owner used one part of his land for the benefit of another portion of his own land, the portion served had a 'quasi-dominant tenement' [and][t]he portion which was used was subject to a 'quasi-servient tenement.' . . . [W]hen the

owner, under those circumstances, sold the portion of his land which had [made] use of the other portion—as for drainage, support, way, or water [—and that use was] apparent, continuous, and necessary to the use of the 'dominant' land sold, the courts presumed that the necessary use of the 'servient' tract passed by implication to the purchaser.

*Drye,* 364 S.W.2d at 207. A party claiming an easement by prior use must prove that at the time of the severance: (1) both parcels were under unified ownership; (2) the use was apparent; (3) the use was continuous; and (4) the use was necessary to the use of the dominant estate. *Drye,* 364 S.W.2d at 207–08; *see also Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex.1966).

Texas courts routinely refer to implied easements based on prior use characteristics simply as "implied easements." *See Mack v. Landry,* 22 S.W.3d 524, 530 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (distinguishing between "easement by necessity" related to inaccessible tract of land and "implied easement" based on prior use characteristics); *see also State v. Beeson,* 232 S.W.3d 265, 273 n. 7 (Tex. App.-Eastland 2007, pet. dism'd) (noting that the plaintiffs' assertion of an implied easement was raised under theory of easement by necessity and was not governed by standards for "implied easement" based on prior use characteristics). The general term "implied easement" is potentially confusing because, by definition, both an easement by necessity and an easement by prior use are implied. *See Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 626 (Tex. 1950); *see also Beeson,* 232 S.W.3d at 273 n. 7; *Mack,* 22 S.W.3d at 530.[4]

4. Where possible, we shall refer to "easements by necessity" and "easements by prior use."

### b. Summary judgment arguments

We first analyze the parties' arguments to ensure that we review the summary judgment grounds according to the appropriate rules explained above.

Union Pacific argued in its summary judgment motion that the Sebers could not establish their right to use the crossing pursuant to an "implied easement" because an easement by necessity no longer was strictly necessary when the 1.5 acre tract became part of the larger tract of land accessible via Stuebner–Airline Road. The Sebers argued in response and on appeal that (1) their claim is for an "implied easement" by prior use rather than an easement by necessity; (2) they are required to show reasonable rather than strict necessity; and (3) the evidence presents a fact issue precluding summary judgment on whether the crossing is "reasonably necessary" to the use and enjoyment of the land.

The "strict necessity" requirement applies to an implied reservation of an easement, and the "reasonable necessity" requirement applies to an implied grant of an easement. *See Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P.*, 981 S.W.2d 916, 921 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (citing *Mitchell*, 246 S.W.2d at 168, and *Howell v. Estes*, 71 Tex. 690, 12 S.W. 62, 63 (1888)). This rule applies to the element of necessity that is relevant to easements by necessity and to easements by prior use. *See Mitchell*, 246 S.W.2d at 168 (applying strict necessity rule from "way of necessity" precedent to claim involving reserved easement by prior use); *see also Howell*, 12 S.W. at 62–63 ("We think the weight of authority sustains the proposition that if an improvement [meets the requirements of an easement by prior use], the use of such improvement will pass as an easement, although it may not be absolutely necessary to the enjoyment

of the [benefitted] estate conveyed."). The Sebers correctly assert that if the right to use the crossing was conveyed as an impliedly granted easement, then they need show only reasonable necessity. *See Mitchell*, 246 S.W.2d at 168; *Howell*, 12 S.W. at 62–63.

■ An easement by necessity is temporary; it continues only so long as the necessity exists and terminates upon the cessation of the necessity. *Bains*, 182 S.W.2d at 399. Under this rule, a grantee must establish that its use of the easement continues to be "reasonably necessary" to its use of its property. *See id.* However, the Sebers expressly deny that they claim an easement by necessity; therefore, they need not establish that their use of the crossing continues to be reasonably necessary to their use of their larger tract of land. The dispute here centers on an easement by prior use. We have not identified and the parties do not cite any Texas authority applying this "continued necessity" rule to an otherwise valid implied easement by prior use. *Cf. Zapata Cnty. v. Llanos*, 239 S.W.2d 699, 702 (Tex.Civ.App.-San Antonio 1951, writ ref'd n.r.e.) ("'A presumption frequently invoked [as justification for easements by prior use is] that the parties contracted with a view to the condition of the property as it actually was at the time of the transaction, and after sale neither party without the consent of the other has a right to change, to the detriment to the other, that condition which openly and visibly existed.... The rule itself, since it presupposes the existence of quasi easements, must be distinguished from the principle which underlies the creation of ways of necessity.'" (quoting *Miles v. Bodenheim*, 193 S.W. 693, 696 (Tex.Civ.App.-Texarkana 1917, writ ref'd))).

Applying the "continued necessity" rule to easements by prior use would contradict the principle that the existence of such an

easement depends only on the situation of the parties at the time of severance. *See Westbrook v. Wright,* 477 S.W.2d 663, 665–66 (Tex.Civ.App.-Houston [14th Dist.] 1972, no writ) ("Whether these requirements are met is to be determined at the time the grantor, the one imposing the quasi easement on one portion of his property for the benefit of another portion, conveys away the dominant tenement, that portion benefitted, and retains the servient tenement."); *see also Daniel v. Fox,* 917 S.W.2d 106, 110 (Tex.App.-San Antonio 1996, writ denied) ("The situation of the parties at the time of the [partition] constitutes the operative facts to support the claim [of an impliedly granted easement based on prior use characteristics]."); *Hoak v. Ferguson,* 255 S.W.2d 258, 260 (Tex.Civ.App.-Fort Worth 1953, writ ref'd n.r.e.) (same).

■■■ Union Pacific's argument fails under this understanding of an implied easement by prior use. Union Pacific argues that the Sebers had to show continued strict necessity after the 1.5 acre tract became part of the larger tract currently owned by the Sebers. We disagree. The Sebers are required to prove reasonable necessity to establish their right to use the crossing pursuant to the grant of an implied easement by prior use. The relevant timeframe for proving reasonable necessity is the point at which the 1.5 acre tract was severed.[5] Union Pacific does not challenge the Sebers' ability to show that use of the crossing was reasonably necessary at that time. Accordingly, summary judgment was not proper on this ground.[6]

We hold that the grounds asserted in Union Pacific's December 14 summary judgment motion did not establish as a matter of law that the Sebers are foreclosed from invoking a right to use the crossing pursuant to an implied easement by prior use.

## B. Entitlement to Exclude from Right–of–Way

Union Pacific argued in its summary judgment motion that it lawfully closed the crossing because railroads have the right to exclude all activities that are inconsistent with railroad purposes, citing *Ft. Worth & D.C. Ry. Co. v. Craig,* 176 S.W. 827, 829 (Tex.Civ.App.-Fort Worth 1915, no writ). Union Pacific claimed that it was entitled to close the crossing because (1) at least one accident has taken place at the crossing over the "heavily travelled" right-of-way; and (2) trespassers "regularly

---

5. The parties disagree about whether the crossing still was necessary when the Sebers became owners of the larger tract of land. This disagreement is immaterial to the resolution of this appeal, and we express no opinion regarding reasonable necessity once the Sebers became owners.

6. Union Pacific argues on appeal that we should uphold the summary judgment because the Sebers produced no evidence of "apparent" or "continuous" prior use of the crossing. The Sebers' ability to produce evidence of these elements of an implied easement by prior use was not challenged in Union Pacific's December 14 summary judgment motion. Union Pacific did challenge the Sebers' ability to present "competent evidence to support the pre-existence of the crossing prior to the Sebers ownership of the land," but this argument was raised for the first time in its reply to the Sebers' summary judgment response, and we do not consider it on appeal. *See Sanchez v. Mulvaney,* 274 S.W.3d 708, 711 (Tex.App.-San Antonio 2008, no pet.) ("[A] movant may not use a reply brief to meet the specificity requirement [of Rule 166a] or to assert new grounds for summary judgment.") (citing *Community Initiatives, Inc. v. Chase Bank of Tex.,* 153 S.W.3d 270, 280 (Tex.App.-El Paso 2004, no pet.); *Callaghan Ranch, Ltd. v. Killam,* 53 S.W.3d 1, 4 (Tex.App.-San Antonio 2000, pet. denied); and *Sams v. N.L. Indus., Inc.,* 735 S.W.2d 486, 487–88 (Tex.App.-Houston [1st Dist.] 1987, no writ)).

cross[ ] the railroad right-of-way [at the crossing] to dump trash and commit vandalism."

 The Sebers argue in response and on appeal that the authorities cited by Union Pacific do not entitle it to judgment as a matter of law on this issue. They contend that *Craig* stands for the proposition that a railroad may erect a fence to exclude trespassers from its right-of-way, just as it may exclude owners of the land underlying the right-of-way if the owners use it in a manner inconsistent with railroad purposes. *See Craig,* 176 S.W. at 829.[7] A railroad may take reasonable steps necessary to effect this purpose "even though the title in fee to the land occupied as a right of way [is] not vested in the railway company." *Id.*

*Craig* does not advance Union Pacific's argument. If the Sebers can show their right to use the crossing pursuant to an implied easement by prior use, then they are not trespassers; further, Union Pacific cites no case in which this rule has been applied to allow a railroad to exclude holders of an easement across the railroad right-of-way conveyed by deed. The trial court's summary judgment could not have been properly based on Union Pacific's argument that it was entitled to exclude the Sebers.[8]

## C. Federal Preemption

Union Pacific argued that it was entitled to summary judgment because the Sebers' claims were preempted by federal law. It stated:

Union Pacific is entitled to summary judgment on the Sebers's [sic] claims because they are preempted by federal law. In 1995, Congress passed the Interstate Commerce Commission Termination Act ("ICCTA"). Pub.L. No. 104–88, 109 Stat. 803. The law abolished the Interstate Commerce Commission and created the Surface Transportation Board, which regulates rail transportation in the United States. *Id.* at § 101 ("The Interstate Commerce Commission is abolished"); *see Friberg v. Kansas City S. Ry. Co.,* 267 F.3d 439, 442 (5th Cir.2001). The ICCTA impliedly preempts the Sebers's [sic] claims. Under conflict preemption, state laws are impliedly preempted when they are obstacles to accomplishing Congress's "full purposes and objectives." *English v. Gen. Elec. Co.,* 496 U.S. 72, 79 [110 S.Ct. 2270, 110 L.Ed.2d 65] (1990).

The Fifth Circuit resolved this issue in the Sebers' favor several weeks before the trial court granted summary judgment. *See Franks Inv. Co. LLC v. Union Pac. R.R. Co.,* 593 F.3d 404, 413, 415 (5th Cir.2010) (en banc) (owner's action seeking to enjoin railroad from closing private railroad crossings not expressly preempted by ICCTA because routine crossing disputes

---

7. Union Pacific also cited *Gulf, Colo. & Santa Fe Ry. Co. v. Candler,* 40 S.W.2d 915, 917 (Tex.Civ.App.-Dallas 1931), *aff'd,* 61 S.W.2d 997 (Tex. Comm'n App.1933), in which the court reviewed a trial court's ruling that property within the railroad's right-of-way may be acquired by the adverse possession of another. *See Candler,* 40 S.W.2d at 916–917. *Candler* is not germane to Union Pacific's argument.

8. Union Pacific additionally argued that it can exclude the Sebers because "the owner of the

fee underlying the railroad ... has no right to occupy the surface of the land conveyed for right-of-way." The Sebers' trespass claim is the only claim that potentially would depend on the Sebers' alleged ownership of the surface estate beneath the railroad right-of-way. Because we dispose of the Sebers' appeal from the trial court's summary judgment on the trespass claim on other grounds, we do not address this additional argument made by Union Pacific.

do not substantially interfere with railroad operations; no implied preemption exists in the absence of evidence that specific crossings unreasonably burdened or interfered with rail transportation); *see also* 49 U.S.C. § 10501(b) (2006).

The Fifth Circuit's rationale applies with equal force here. Accordingly, the trial court's summary judgment could not have been properly based on Union Pacific's argument that the Sebers' claims are preempted by federal law.

### D. Remaining Issues

■ The remaining issues concern grounds that would entitle Union Pacific only to partial summary judgment if granted. When a properly appealable summary judgment encompasses both grounds for full summary judgment and for partial summary judgment, we can consider all matters raised and reverse only those portions of the judgment that were rendered in error. *Page v. Geller*, 941 S.W.2d 101, 102 (Tex.1997) (per curiam) (citing *Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336, 337 (Tex.1997) (per curiam)). Considering the merits of the grounds for partial summary judgment under these circumstances avoids "the needless relitigation of decided issues and thus promote[s] judicial economy." *See Bandera*, 946 S.W.2d at 337.

#### 1. Viability of trespass claim

Union Pacific contends that the evidence conclusively establishes that the Sebers cannot prevail on their trespass claim, stating: "Here, the Sebers admit that no Union Pacific employee entered onto any area outside the right-of-way without consent. Rather, the sole basis for their allegation of trespass is that *they own the land under the right-of-way from the center of the track*." (emphasis added).

In support of this argument, Union Pacific quoted from the deposition of Charles Seber, who testified:

Q. Okay. You've said that Union Pacific people came on your property and trespassed onto your property, right?

A. Yeah, when they cross the track.

Q. Okay. When they cross the track?

A. Right, when they cross the track.

Q. When they cross the track you mean by way of the right-of-way?

A. Right.

Q. Okay. The right-of-way is a hundred feet wide, right?

A. Uh-huh.

Q. "Yes"?

A. Well, I'm talking about the center of the track.

Q. Okay. But, to your knowledge, the only place that Union Pacific people have ever been has been within the hundred foot right-of-way, correct?

A. Right.

Q. Have they ever come onto any other part of your property, besides the right-of-way?

A. I don't think so.

Q. To your knowledge, they have not?

A. I don't think.

Q. And is it your contention that Union Pacific trespassed on your property based on your contention that you own the land under—

A. Right.

Q. —the tracks?

A. Right.

Q. Are you claiming that the right-of-way is not valid?

A. I don't—I believe it would be included.

Q. You believe it would be included in what?

A. That they don't own [sic].

Q. Okay. Do you—are you claiming that Union Pacific doesn't have the right to use the right-of-way?

A. Well, I'm not claiming—they are using it, and they may continue to use it. Now, right or wrong, you know, I couldn't answer that. If it's not theirs, then, they are trespassing.

Q. And that is the only trespass you are claiming, is that they have come onto the right-of-way area—

A. Right.

Q. —and not that they have come onto any other area of your property?

A. Right.

(emphasis added). Union Pacific argued:

Under Texas law, the condemnor of an easement in land is entitled at all times to have access to and use of the land as necessary to enable it to perform the duties involved in the purpose of the condemnation. The decree of condemnation creating the railroad easement at issue herein specifically recites that the easement is condemned to the use of the railroad "for the maintenance, construction and operation of its railroad." Union Pacific entered onto its right-of-way and removed the crossing as a part of its maintenance of the railroad.

The Sebers do not dispute that the trespass claim rests solely on the Sebers' contention that Union Pacific trespassed by entering the right-of-way over land owned by the Sebers. The Sebers argued to the trial court that the actions Union Pacific took within the right-of-way to remove the crossing constituted a trespass because they "do[ ] not constitute maintenance of the railroad." The Sebers do not reurge this argument on appeal, and we do not consider it.

The Sebers argue on appeal that "the Railroad cannot simply claim that it stayed on its right of way and therefore did not commit a trespass, when the Property (and the appurtenant crossing) was conveyed by the Railroad's predecessor." This argument apparently is rooted in the Sebers' theory that they own or possess the crossing itself instead of an easement allowing them to utilize it. The Sebers do not identify and we have not located any authority characterizing a landowner's interest in a railroad crossing as anything other than a right to utilize the crossing by virtue of an easement.

 Property ownership or a right to physical possession of real property is a necessary element of a trespass claim. *See Tex. Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 286 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("To recover damages for trespass to real property, a plaintiff must prove that . . . the plaintiff owns or has a lawful right to possess real property. . . ."). An easement is a non-possessory interest in land. *See Marcus Cable Assocs., L.P.*, 90 S.W.3d at 700; *Lakeside Launches, Inc.*, 750 S.W.2d at 871. Accordingly, we affirm the trial court's grant of summary judgment on the trespass claim based on the Sebers' argument that they own or possess the crossing itself. *See Collins*, 871 S.W.2d at 932 (appellants must show that each of the independent arguments alleged in the motion are insufficient to support the summary judgment).

### 2. Entitlement to exemplary damages

Union Pacific argues that it is entitled to summary judgment on the Sebers' exemplary damages claim. It contends that the Sebers cannot establish that Union Pacific subjected itself to exemplary damages by removing the crossing because (1) the evidence conclusively negates the Sebers' allegation that Union Pacific acted with statutory "malice;" (2) the Sebers can produce no evidence showing that Union Pacific

acted with statutory "malice;" and (3) the Sebers can produce no evidence of a "substantial likelihood of significant injury."

Generally, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm at issue results from (1) fraud; (2) malice; or (3) gross negligence. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.003(a) (Vernon 2008). The Sebers do not allege fraud or gross negligence; therefore, we address only statutory malice.

 Malice is defined in this context as "specific intent by the defendant to cause substantial injury or harm to the claimant." *See id.* § 41.001(7) (Vernon 2008). Specific intent means that the actor desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it. *Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985). Malice may be proven by direct or circumstantial evidence. *KPH Consolidation, Inc. v. Romero,* 102 S.W.3d 135, 144 (Tex.App.-Houston [14th Dist.] 2003), *aff'd,* 166 S.W.3d 212 (Tex.2005).

Union Pacific argues that as a matter of law the Sebers cannot obtain exemplary damages because the evidence conclusively negates the Sebers' assertion that Union Pacific acted with the specific intent to cause substantial injury or harm. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.001(7). To meet its summary judgment burden under Rule 166a(c), Union Pacific proffered deposition testimony from Charles Seber and Union Pacific manager Doug Woods; both testified that Union Pacific verified before closing the crossing that the Sebers have alternative access to their property via Stuebner–Airline Road.

In response, the Sebers argue that they "made clear to the Railroad the harm to their property that would result from the closing of the crossing.... The Railroad even acknowledged that harm by offering to discuss payment for the construction of new alternat[ive] access to the property." The Sebers claim that Union Pacific closed the crossing despite the Sebers' opposition and Union Pacific's awareness that "negative consequences" would result, forcing the Sebers to use less convenient access via Stuebner–Airline Road. Barbara Seber testified:

Q. In your petition you say that the acts of Union Pacific were intentional, willful, and malicious. Tell me what you mean by that.

A. Well, I think that after we met with Mr. Woods, he should have gone back to the bosses and ... said, "I think these people may have a good claim that goes back to 1902 pertaining to this crossing. I think we need to make sure that we, the Railroad, have the right to inconvenience these people by removing that crossing, before it ever gets to court. Let's have our talks before we remove the crossing."

We met with Doug Woods one time, and the next thing the crossing was gone. They just assumed they had the right to do what they wanted to do because they were the Railroad. And I think we should have discussed it more than once before they jumped in there and removed it and inconvenienced us.

Q. So the behavior that you're claiming was willful, malicious, and intentional was the decision to go ahead and close the crossing?

A. Yeah, without a second—you know, without a second get-together.

 We conclude that this record establishes as a matter of law the absence of specific intent to cause substantial injury or harm; evidence of a purposeful restriction of access to land that merely makes ingress and egress less convenient does

not raise a material fact issue regarding a "substantial injury." *Cf. Shed, L.L.C. v. Edom Wash 'N Dry, L.L.C.*, No. 12–07–00431–CV, 2009 WL 692609, at *8–9 (Tex. App.-Tyler Mar. 18, 2009, pet. denied) (mem. op.) (no jury could form a firm conviction that defendant acted with specific intent to cause substantial injury or harm based on evidence of defendant's interference with and purposeful restriction of easement used to access plaintiff's property; "[E]ven proof of an intent to unreasonably restrict an access easement is not proof of malice.... While blocking a more direct walking path and having a small opening in the fence for vehicular traffic might demonstrate an intent to cause injury, the requirement is substantial injury.").

We also reject any suggestion that Union Pacific's awareness of a dispute about the Sebers' legal entitlement to use the crossing, and that the Sebers were opposed to removal of the crossing, amounts to malice. *Cf. Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 448–49 (Tex.App.-Texarkana 2006, no pet.) (reversing exemplary damages based on

claim that defendant maliciously encroached on property found to have already been adversely possessed by plaintiff; evidence showed that defendant knew ownership of the property was in dispute, but record contained no evidence that defendant knew it was without rights to the encroached-upon property).[9] Summary judgment on the Sebers' exemplary damages claim was proper.

We affirm the trial court's summary judgment as to the Sebers' claim for exemplary damages based on malice.

## II. The Sebers' Partial Summary Judgment

The Sebers argue in their second issue on appeal that we may consider their partial summary judgment motion because it was a "competing" summary judgment motion.

We may consider summary judgment evidence from both sides, determine all questions presented, and render the judgment the trial court should have rendered if (1) both parties file summary

---

9. The Sebers also argue that Union Pacific's actions were undertaken with "conscious indifference" to the harm that "would befall the Sebers if the crossing were removed." This argument relies on a pre–2003 definition of malice found in section 41.001(7), which included an alternative gross negligence component; this component was recodified in 2003 as the separate definition for "gross negligence" under 41.001(11). *See* Act of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109, formerly Tex. Civ. Prac. & Rem.Code § 41.001(7)(B) (" 'Malice' means: (A) a specific intent by the defendant to cause substantial injury to the claimant; or (B) an act or omission: (i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with

conscious indifference to the rights, safety, or welfare of others."); Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 13.02, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 887, 898–99 (applicable to actions filed on or after September 1, 2003; retaining similar version of paragraph (A) as definition for "malice" under 41.001(7) and recodifying paragraph (B) as definition for "gross negligence" under 41.001(11)); *see also Dillard Dep't. Stores, Inc. v. Silva*, 148 S.W.3d 370, 373 (Tex.2004) (describing paragraph (B) of pre–2003 definition of malice as "an alternative gross negligence component" of malice). The Sebers' exemplary damages claim is based on their allegation that Union Pacific's removal of the crossing was "intentional, willful and malicious." The Sebers do not allege that Union Pacific was grossly negligent. Even if we considered this alternative definition, the trial court did not err in sustaining Union Pacific's ground for summary judgment. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex.2009).

judgment motions, and (2) the court grants one and denies the other. *See Dorsett*, 164 S.W.3d at 661. This rule applies only when both parties seek final relief in their cross-motions for summary judgment. *See CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex.1998) (per curiam).

■ However, we properly may render partial summary judgment on liability alone when the relief sought is a declaratory judgment. *Id.* (citing *Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 889–90 (Tex.1990)).[10] The Sebers seek relief in the form of a declaratory judgment regarding their right to use the crossing. They argue that (1) the deed conveying the 1.5 acre tract from Union Pacific's predecessor to the Sebers' predecessor expressly conveyed the "right to use" the crossing as an "appurtenance" to the property; and (2) based on this express conveyance, Union Pacific is estopped by deed from denying the conveyance of the crossing.

Assuming we may properly reach the merits of the Sebers' partial summary judgment motion because the Sebers seek relief in the form of a declaratory judgment, their motion depends on the following argument regarding the Sebers' alleged right to use the crossing:

> The [relevant] deed transferred the 1.5 acre tract, together with all rights and appurtenances with respect to such tract. This included the right to use the railroad crossing. *Moore v. Energy States, Inc.*, 71 S.W.3d 796, 800 (Tex. App.-Eastland 2002, pet. den. [sic] ).

This argument is an abbreviated version of the argument we rejected in section I.A. of our analysis, and we do not address it again. We overrule the Sebers' second issue.

## CONCLUSION

In addressing the Sebers' first issue, we (1) overrule the Sebers' arguments regarding summary judgment on their trespass and exemplary damage claims; and (2) sustain the Sebers' arguments regarding Union Pacific's remaining summary judgment grounds asserted in its December 14 "Motion for Summary Judgment." We overrule the Sebers' second issue.

We therefore (1) affirm the trial court's January 26, 2010 summary judgment order with respect to the Sebers' trespass and exemplary damages claims; (2) reverse the trial court's January 26, 2010 summary judgment order with respect to all other claims asserted by the Sebers in their Original Petition; and (3) affirm the trial court's denial of the Sebers' partial summary judgment motion. We remand this case to the trial court for further proceedings consistent with this opinion.

JAMISON, J., dissenting and concurring.

MARTHA HILL JAMISON, Justice, dissenting and concurring.

Because I disagree with the majority's conclusion that Union Pacific conclusively negated the Sebers' claim of malice, I respectfully dissent on the issue of whether traditional summary judgment was properly granted on the Sebers' request for exemplary damages. I concur with the remainder of the majority's analysis and disposition.

The majority is correct in its recitation of the standards and law governing our review. In the context of a traditional motion for summary judgment, which the

---

10. Union Pacific argues that we should not reach the merits of the Sebers' partial summary judgment motion because the trial court granted summary judgment before Union Pacific's response to the Sebers' motion was due. We do not address this argument because we resolve the Sebers' issue on other grounds.

trial court granted in this case, the movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000) (per curiam).[1] To be entitled to a final traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If, and only if, the movant satisfies its initial burden, will the burden shift to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). We consider a grant of summary judgment under a de novo standard of review. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

The Sebers sought exemplary damages based solely on their claim that Union Pacific acted with malice in removing the Sebers' private railroad crossing. *See* Tex. Civ. Prac. & Rem.Code § 41.003(a) (governing recovery of exemplary damages). The Civil Practice and Remedies Code defines malice as "a specific intent by the defendant to cause substantial injury or harm to the claimant." *Id.* § 41.001(7). "Specific intent" in this context means that the actor must have desired to cause the consequences of his act or believed the

consequences were substantially certain to result from the act. *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985).

The majority misapplies these standards as to the Sebers' claim of malice. In a brief paragraph, the majority finds that Union Pacific's evidence conclusively negates specific intent to cause substantial injury or harm because Charles Seber and Doug Woods testified at their depositions that Union Pacific verified that the Sebers had alternative access before it closed the crossing at issue in this lawsuit.[2] Apparently finding such testimony conclusive, the majority then proceeds to consider and reject the Sebers' responding arguments that they had made it clear to Union Pacific that their property would be harmed by the closing of the crossing and that they opposed such closing.

In its motion, Union Pacific likewise placed undue emphasis on the Sebers' alleged failure to produce evidence in support of their exemplary damages claims. Indeed, the only point at which Union Pacific states that the evidence was conclusive in its favor is in the heading of the section on exemplary damages. In contrast, the text of the section is replete with allegations that the Sebers had produced "no evidence" to support an award of exemplary damages. Specifically, Union Pacific asserted that there was *no evidence* of either (1) a likelihood that serious harm would result from its actions or (2) a specific intent to cause such harm. Before the burden could be shifted to the Seber's to produce argument and evidence, however, Union Pacific as movant had the pri-

---

1. Union Pacific also filed a "Motion for No-Evidence Summary Judgment"; however, as the majority clearly states, there is no indication in the record that the trial court ruled on it. Accordingly, we review the trial court's action only under traditional summary judgment standards.

2. Since the evidence indicates that Union Pacific knew, at the time of the crossing's closure, the likely consequences alleged by the Sebers, it appears that the inquiry boils down to whether the alleged harm is "insubstantial" as a matter of law.

mary (and considerably higher) burden of proving that no material fact issue existed and that it was entitled to judgment as a matter of law. *See, e.g., Willrich,* 28 S.W.3d at 23. In other words, the Sebers did not have to present any evidence to defeat the traditional motion for summary judgment unless and until Union Pacific provided conclusive evidence in support of the motion. *See Walker,* 924 S.W.2d at 377.[3]

Neither case cited by the majority in support of its analysis involves a summary judgment. Both cases, *Shed, L.L.C. v. Edom Wash 'N Dry, L.L.C.,* No. 12–07–00431–CV, 2009 WL 692609 (Tex.App.-Tyler Mar. 18, 2009, pet. denied) (mem. op.), and *Kinder Morgan North Texas Pipeline, L.P. v. Justiss,* 202 S.W.3d 427 (Tex.App.-Texarkana 2006, no pet.), involved legal sufficiency challenges to the evidence produced by a plaintiff at a jury trial. The focus in those cases was clearly on the evidence produced by the plaintiff, as would also be proper in a no-evidence summary judgment context, and not on the evidence presented by the movant/defendant, as would be proper in a traditional summary judgment context. *See* Tex.R. Civ. P. 166a (governing summary judgments); *City of Keller,* 168 S.W.3d at 823 ("[T]he test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review."); *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 & n. 4 (Tex.2002) (discussing standard of review for no-evidence summary judgments).[4] In a traditional summary judgment, the focus should at least initially be on the evidence pre-

3. In its motion, Union Pacific also cited testimony from Union Pacific manager Doug Woods that (1) the decision to close the Sebers' access was made only after an investigation revealed that they had an alternative access to their property, (2) he met and discussed the closure with the Sebers, (3) the closure was pursuant to a federal mandate to close unnecessary crossings, and (4) it only took a couple of minutes to drive between the original access and the alternative access. Additionally, Union Pacific cited to evidence that the Sebers admitted that they had not been threatened, harassed, or intimidated by Union Pacific and that Union Pacific had offered to contribute to improving the alternative access. Lastly, Union Pacific pointed out that Charles Seber had made no investigation into the cost to improve the alternative access and had not had the property appraised so as to establish the reduction in value that the Sebers claimed occurred from the access closure.

The evidence cited by Union Pacific, while potentially relevant to the issue of malice, does not conclusively establish that Union Pacific did not possess a specific intent to cause substantial injury or harm to the Sebers when it closed their private railroad crossing. Simply establishing that the Sebers had alternative access, or that Union Pacific had offered to contribute to improve that access, does not conclusively disprove substantial harm would result from closure; it would depend on the nature of the two points of access and the actual nature of the resulting harm (the suggestion that the two points were within two minutes of each other may also be relevant but is likewise not conclusive). Similarly, evidence that a meeting took place before the closure and that the Sebers did not feel threatened, harassed, or intimidated does not conclusively negate malice. The meeting may have been perfunctory, and such feelings are not requirements for proving malice. Further, the existence of a general interest in closing crossings does not establish as a matter of law that no malice was involved in the decision to close this particular crossing. Lastly, the allegation that the Sebers had not established the exact amount of harm to their property challenges the sufficiency of the evidence to support their claims but does not negate them.

4. The *Shed* case can be further distinguished on its facts. The Shed at all times provided Edom Wash 'N Dry's occupants access for ingress and egress across the Shed's property and maintained an opening in the fence for vehicular traffic. The Sebers had no such immediate relief.

659

sented by the movant. *See Walker*, 924 S.W.2d at 377.

Because Union Pacific failed to conclusively negate at least one essential element of the Sebers claims for exemplary damages based on malice, I would reverse the grant of traditional summary judgment on the exemplary damages issue. I agree with the remainder of the majority's analysis and disposition.