COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

S & G ASSOCIATED DEVELOPERS, §
LLC, AND STEFANYK
DEVELOPMENT, INC., §

§

Appellants, §

v. §

COVINGTON OAKS CONDOMINIUM §
OWNERS ASSOCIATION, INC.,

§

Appellee.

No. 08-10-00192-CV

Appeal from the

285th Judicial District Court

of Bexar County, Texas

(TC# 2003-CI-03593)

## **O P I N I O N**

This appeal concerns the Covington Oaks Condominiums, a four-phase residential

development in Bexar County, Texas.   Phases I, II, and III are under the governance of the

Covington Oaks Condominium Owners Association, known as "COHOA."   For many years,

COHOA has been in litigation with the owners of Phase IV regarding whether the entrance and

private road used by the residents of Phases I, II, and III can also be used to access Phase IV.   The

trial court ultimately granted summary judgment in favor of COHOA.   We affirm in part and

reverse and remand in part.

### **Factual and Procedural Background**

Although the record spans over two-thousand pages, the facts are poorly developed.   It is

clear, however, that land encompassing all four phases was deeded to the original developer in

1981.   The original developer planned four phases of condominiums that would be served by a

common gated entrance.   Three phases of condominium buildings have been completed.   These

condominiums are connected to Brandeis Road, which fronts the development, by a common entrance and private road that circles through the development.

The original developer lost title to the Phase IV land, resulting in its severance from the remaining property. Phase IV apparently has no frontage to Brandeis Road, or any other public road, because COHOA owns a narrow strip of land separating it from Brandeis. Stefanyk Development, Inc. purchased the Phase IV property in 1993. In 1994, Don Stefanyk and John Garza formed S&G Associated Developers, L.L.C. to construct a condominium building on the Phase IV land.

A dispute subsequently arose as to whether Stefanyk Development and S&G have the right to use the entrance and road that serve Phases I, II, and III. In 1995, the parties entered into a compromise settlement agreement, whereby Stefanyk Development would build up to six condominium buildings, meeting certain specifications, on Phase IV. This agreement required Stefanyk Development to put up a temporary fence to separate Phase IV from the other phases during construction of the buildings. Once the temporary fence was completed, the agreement provided that Stefanyk Development could "open the gate in the iron perimeter fence located on the western boundary of the Covington Oaks Condominium Property along Brandeis Road." When construction was complete, Stefanyk Development was required to "weld the temporary construction gate permanently closed, at which time Stefanyk Development and third-party residents of Phase IV shall enter the condominium regime through the existing security gates on Brandeis Road." COHOA agreed to recommend to its members that Phase IV be annexed into their association and to present the issue for a vote on or before its 1996 annual meeting. Stefanyk Development and S&G subsequently built one six-unit building on Phase IV.

The record does not reflect what happened between 1996 and 2001.[1] In August 2001, Stefanyk Development deeded a portion of the Phase IV land to Dan and Jean Villareal, but retained the portion upon which the condominium building had been constructed.

In December 2001, COHOA's attorney sent Don Stefanyk and Dan Villareal a letter stating that the previous "proposed" settlement agreement was never consummated, that it had "been quite some time since the obligations under that agreement should have been performed," and that COHOA therefore considered the agreement no longer valid. The letter demanded that an alternative entrance be constructed for Phase IV.

In March 2003, COHOA advised Stefanyk Development and the Villareals by letter that it intended to build a fence separating Phase IV from the rest of Covington Oaks. The letter stated that "there will be an entrance to Phase IV provided from Brandeis to Phase IV, along the northern edge of The Covington Oaks' property. Once the access easement for Phase IV is completed, [COHOA] will deactivate the gate codes provided to people associated with Phase IV." The letter further stated that COHOA would provide the new entrance on Brandeis and would permit the Phase IV owners to pave a driveway if they wished to do so. Three days later, S&G commenced this suit against COHOA, and later that month, the Villareals filed a plea in intervention.

On March 11, 2005, the parties entered into a mediated settlement agreement. This agreement required Stefanyk Development to pay COHOA $15,000 by March 21, 2005. The agreement further provided that the parties would dismiss all claims and the Villareals would undertake certain actions, "[i]f Phase IV is annexed by the members of Covington Oaks

---

[1] COHOA asserted in its summary judgment motion and in its appellate brief that the annexation vote did not occur in 1996 and that it notified Stefanyk's counsel that year that it considered Stefanyk to be in breach of the 1995 agreement. COHOA has not cited any evidence in the record to support these assertions.

3

Condominium Owners Association on before [sic] 90 days from the date of this agreement."

Shortly after entering into this agreement, Stefanyk Development deeded its portion of Phase IV to its attorney as "trustee."[2] In November 2005, COHOA informed Stefanyk Development, S&G, and the Villareals that, after three rounds of balloting, the proposed annexation of Phase IV failed.

In February 2007, COHOA filed a motion for summary judgment. The trial court conducted a hearing on the motion, but deferred consideration of it and instead allowed the petition to be amended to substitute the attorney for Stefanyk Development and S&G as plaintiff because the property had been transferred to him.

Subsequently, the sixth amended petition was filed, naming the attorney as plaintiff in his capacity as trustee. COHOA filed special exceptions to this petition, arguing that the attorney had no capacity to appear in place of Stefanyk Development and S&G. COHOA also filed an amended motion for summary judgment.

The trial court attempted to conduct a second summary judgment hearing. After hearing arguments regarding the attorney's capacity to sue, the court abated the case so the attorney could transfer ownership of Phase IV back to Stefanyk Development, which would then be substituted as plaintiff.

The seventh amended petition was filed on August 3, 2007. It names only Stefanyk Development and S&G as plaintiffs. On September 4, 2007, the court heard argument on the amended motion for summary judgment, and on September 10, 2007, it signed an order granting the motion in all respects. This order was not a final judgment because it did not adjudicate the

_____

[2] The attorney later explained to the trial court that this was done because Don Stefanyk lives in Canada and did not wish to travel back and forth to sign documents that he might be required to sign after the case was dismissed.

4

claims between the Villareals and Plaintiffs.   Those claims were subsequently tried to the court, which entered a final take nothing judgment in June 2010.   Plaintiffs then brought this appeal of the summary judgment.

## Discussion

When the summary judgment was granted, Plaintiffs' live pleading was the seventh amended original petition, which included several claims.   First, Plaintiffs sought specific performance of the 2005 settlement agreement.   They alleged that the agreement required COHOA to attempt to have Phase IV annexed.   According to Plaintiffs, COHOA intentionally refused to solicit the necessary votes to accomplish this.   They further alleged that they had an easement over COHOA's property implied from existing use, implied from necessity, and by estoppel.[3]

On appeal, Plaintiffs raise three issues:   (1) that the trial court erred in granting a no-evidence summary judgment on the easement claims; (2) that the court erred in granting summary judgment on the breach of contract claim; and (3) that the court erred in granting a traditional summary judgment.   Within the second issue, Plaintiffs attack the no-evidence grounds pertaining to their contract claim, and within the third issue, they attack the traditional grounds pertaining to the easement and contract claims.

### *Standard and Scope of Review*

Because the trial court did not specify the grounds that it relied upon for its ruling, the

---

[3] The seventh amended original petition also alleged that COHOA violated the 2005 agreement in additional ways and violated the condominium declaration for Covington Oaks, that COHOA tortuously interfered with their easement, and that COHOA is estopped from denying that Phase IV is a member of COHOA.   The prayer for relief sought specific performance of the 1995 compromise settlement agreement.   None of these issues have been brought forward on appeal; therefore, we will not discuss them further.

summary judgment must be affirmed if any of the theories advanced is meritorious. *See Viasana v. Ward County*, 296 S.W.3d 652, 653-54 (Tex.App.--El Paso 2009, no pet.). To obtain a no-evidence summary judgment, a defendant must only specify which elements of the plaintiffs' claim lack evidentiary support. *Arellano v. Americanos USA, LLC*, 334 S.W.3d 326, 330 (Tex.App.--El Paso 2010, no pet.). The burden then shifts to the plaintiffs to produce evidence raising a genuine issue of material fact regarding each challenged element. *Id.* To meet this burden, they must produce more than a scintilla of evidence regarding the challenged elements. *Id.* For a traditional summary judgment, the defendant has the burden of showing that there is no genuine issue of material fact by conclusively disproving at least one element of the plaintiffs' claims or by conclusively proving all of the elements of an affirmative defense. *Id.* On appeal, we view the evidence *de novo* and in the light most favorable to the nonmoving plaintiffs, considering all evidence favorable to them as true and indulging every reasonable inference and resolving any doubts in their favor. *See id.*

In this case, COHOA filed objections to Plaintiffs' summary judgment evidence, but it failed to obtain a ruling on the objections. It does not argue on appeal that any of the evidence should be excluded from our review. Therefore, we will consider all of the summary judgment evidence submitted by Plaintiffs. *See id.* at 329-30.

### *Easement Claims*

"It is 'universally recognized' that--'without aid of language in the deed, and indeed sometimes in spite of such language'--the circumstances surrounding an owner's conveyance of part of a previously unified tract of land may cause an easement to arise between the two new parcels." *Seber v. Union Pac. R.R. Co.*, 350 S.W.3d 640, 647 (Tex.App.--Houston [14th Dist.]

6

2011, no pet.), *quoting Mitchell v. Castellaw*, 246 S.W.2d 163, 167 (1952). There are two types of implied easements in Texas: easements implied by necessity and easements implied by prior use. *See Seber*, 350 S.W.3d at 648. The elements for an easement by necessity are: (1) unity of ownership at severance; and (2) necessity at the time of severance. *See Ingham v. O'Block*, 351 S.W.3d 96, 101 (Tex.App.--San Antonio 2011, pet. denied). The elements for an easement by prior use are: (1) unity of ownership at severance; (2) apparent and continuous use of the easement at severance; and (3) necessity. *See id.* at 103.

Easements may also be created by estoppel. The elements for an easement by estoppel are: (1) a representation communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Id.* at 100.

### No-Evidence Grounds

Although Plaintiffs' petition alleged an easement by necessity, by prior use, and by estoppel, the no-evidence portion of the summary judgment motion lumps all of these theories together under the heading "Easement." The motion does not list the generic elements of each easement claim as to which there is no evidence. Instead, it asserts that Plaintiffs have no evidence regarding ten issues, without explaining how these issues pertain to the elements of the easement claims.

First, the motion asserts that there is no evidence that there was unity of ownership when Stefanyk Development acquired Phase IV in 1993. This is not an element of any of Plaintiffs' easement claims. As can be seen by the list of elements above, no unity of ownership is required for an easement by estoppel. Although unity of ownership is required for easements by necessity and by implied grant, the relevant time to determine unity of ownership is when the easement was

7

allegedly created, *i.e.*, at severance. *See Ingham*, 351 S.W.3d at 101; *Holden v. Weidenfeller*, 929 S.W.2d 124, 129 (Tex.App.--San Antonio 1996, writ denied).[4]

Second, the motion asserts that there is no evidence that a road was in use or apparent when Stefanyk Development acquired Phase IV. Again, this is not an element of Plaintiffs' claims. It does not relate to any element of an easement by estoppel or by necessity. Although apparent use is required for an easement by prior use, the relevant point for determining this element is at severance. *See Holden*, 929 S.W.2d at 129.[5]

Third, the motion asserts that there is no evidence that it was necessary to use COHOA's entrance road to access Phase IV when Stefanyk Development acquired Phase IV. This assertion does not relate to any element of an easement by estoppel. Necessity is, however, an element for easements by prior use and by necessity. Necessity is initially determined at the time of severance. *See Ingham*, 351 S.W.3d at 101; *Holden*, 929 S.W.2d at 129. Regarding easements by prior use, there is no requirement that the necessity continue after severance. *Seber*, 350 S.W.3d at 649-50.

The rule is different for easements by necessity. These easements are temporary and continue only so long as the necessity exists. *Seber*, 350 S.W.3d at 649. Plaintiffs offered more than a scintilla of evidence that it was necessary to use COHOA's entrance road when Stefanyk Development acquired Phase IV. John Garza submitted an affidavit, which states that since the

---

[4] In its appellate brief, COHOA states that the original developer deeded Phase IV to the lender in lieu of foreclosure in 1982. Thus, 1982 would be the time of severance.

[5] In its appellate brief, COHOA states that three phases had become part of COHOA by 1987 and that the residents of these phases "entered and traveled through the property on a private drive that intersected with the adjacent public street known as Brandeis." Since it is undisputed that Stefanyk Development acquired Phase IV in 1993, this statement strongly suggests that the road was in use and apparent at that time.

8

time Phase IV was purchased, the only connection from Brandeis Road to Phase IV has been through COHOA's entrance and the private road that connects all four phases of Covington Oaks.

Fourth, the motion asserts that there is no evidence that there is no way to access Phase IV except by an easement over COHOA's property.   Garza's affidavit explicitly avers that there is "no access to Phase IV from any public street, including Brandeis, that does not require travel across land owned by Covington Oaks."   This is sufficient to create a fact issue that the necessity continues to the present day.

Fifth, the motion asserts that there is no evidence that Plaintiffs suffered damages that could not have been mitigated by building their own driveway.   Although not argued by Plaintiffs, we note that damage is not included in the elements discussed above and that mitigation of damages is an affirmative defense, making it an inappropriate basis for a no-evidence summary judgment.   *See Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex.App.--Houston [14th Dist.] 2003, no pet.); *Taylor Foundry Co. v. Wichita Falls Grain Co.*, 51 S.W.3d 766, 774 (Tex.App.--Fort Worth 2001, no pet.).

COHOA contends that Plaintiffs failed to challenge this ground in their response to the summary judgment motion and in their appellate brief.   Our review of the summary judgment response shows that Plaintiffs unambiguously addressed this ground.   Their arguments regarding this ground were virtually identical to their arguments regarding the previous two grounds. Specifically, they relied on Garza's affidavit to establish that they cannot build any alternative driveway that does not require travel across COHOA's property.   Their appellate brief includes a general issue framed as follows:   "Did the trial court err in granting appellee's motion for no-evidence summary judgment as to appellants' claims for implied easement?"   Although the

9

brief does not contain a separate sub-heading for this ground, the substance of their argument about their inability to access Phase IV without traveling across COHOA's property is addressed throughout the brief. We therefore conclude that Plaintiffs have challenged this ground on appeal. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

However, it is difficult to analyze this ground because it does not relate to any actual element of Plaintiff's easement claims, yet Plaintiffs have not challenged the ground on this basis. Under the circumstances, we construe this ground as merely a rewording of the previous two grounds and we conclude that Garza's affidavit was sufficient to defeat summary judgment.

In two related arguments, the motion asserts that there is no evidence that a plat or marketing map showed any easement or that a plat or marketing map was a promise given to Plaintiffs on which they relied. On appeal, COHOA contends that these assertions relate to Plaintiffs' easement-by-estoppel claim. A representation on a plat may satisfy the first element of easement by estoppel. *See, e.g., Halsell v. Ferguson*, 202 S.W. 317, 322 (Tex. 1918). But a plat is only one method of satisfying this element; it is not a required element itself. Plaintiffs disclaim any reliance on this method of proof. Therefore, the absence of an easement on a plat or marketing map is irrelevant.

The motion also asserts that there is no evidence that Plaintiffs took any action to develop Phase IV in reliance on any promise of an easement. This assertion concerns two elements of easement by estoppel--representation and reliance. The 1995 settlement agreement provided that Stefanyk Development was to construct up to six buildings on Phase IV and that when construction was complete, Stefanyk Development and Phase IV residents could "enter the condominium regime through the existing security gates on Brandeis Road." In his affidavit,

10

Garza claims that because Plaintiffs used COHOA's entrance road since 1993, he believed that they had a right to use it. In reliance on this right, they constructed a condominium building on Phase IV. COHOA did not formally indicate an unwillingness to allow Plaintiffs and their tenants to use the common entrance until December 2001. This evidence is sufficient to raise a fact issue on the elements of representation and reliance. *See Holden*, 929 S.W.2d at 131 (holding that verbal representation is not required); *see also Goodenberger v. Ellis*, 343 S.W.3d 536, 541-42 (Tex.App.--Dallas 2011, pet. denied)(finding a fact issue regarding whether a property developer made a representation by its action of designing lots so that they used an easement over the disputed tract).

Next, the motion asserts that there is no evidence that Stefanyk Development's deed granted an easement. Because Plaintiffs are not alleging an express easement, it does not matter whether there was any express mention of the easement in the deed. If an easement was created by necessity or prior use at the time of severance, it passed to subsequent purchasers regardless of the deed's language. *See Holmstrom v. Lee*, 26 S.W.3d 526, 531-32 (Tex.App.--Austin 2000, no pet.); *Rushin v. Humphrey*, 778 S.W.2d 95, 97 (Tex.App.--Houston [1st Dist.] 1989, writ denied).

Tenth, and finally, the motion asserts that there is no evidence that any person with legal ownership and legal capacity brought this suit. This assertion apparently relates to COHOA's contention that Plaintiffs' attorney did not actually own Phase IV, but was acting merely as a placeholder for Stefanyk Development and S&G. As Plaintiffs suggest, when a plaintiff is misnamed, the proper solution is to abate the case so that the pleading deficiency can be corrected. *See* 1 Tex.Jur.3d *Actions* § 151. The trial court followed this approach, and allowed the filing of the seventh amended petition, which named Stefanyk Development and S&G as plaintiffs and

11

removed the attorney as plaintiff. Because the seventh amended petition was on file at the time of the summary judgment hearing, any issue created by the attorney serving as plaintiff is moot.

As for Stefanyk Development and S&G, we believe that Garza's affidavit is sufficient to avoid a no-evidence summary judgment on the question of their ownership and capacity to bring suit. The affidavit states that S&G owns the condominium building "and the combined building and land upon which said building sits is the result of a joint venture agreement between Stefanyk [Development] and S&G."[6]

Plaintiffs' first issue, concerning the no-evidence grounds supporting their easement claims, is sustained.

### Traditional Grounds

COHOA's motion asserts several grounds for a traditional summary judgment on the easement claims. First, it asserts that Weber lacked standing. As we have just discussed, this assertion is moot.

Next, the summary judgment motion asserts *res judicata* or claim preclusion. A party relying on the affirmative defense of *res judicata* must prove: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

To satisfy the first element of *res judicata*, COHOA relies on the 2005 settlement agreement, which purported to resolve all of the claims raised in this suit. COHOA notes that

---

[6] In its appellate brief, COHOA states that "Stefanyk Development, Inc. . . . owns the land on which S&G's building is located."

12

"[a]n agreed judgment of dismissal in settlement of a controversy is a judgment on the merits." This is an accurate statement of law, but it does not apply here because the 2005 agreement did not result in an agreed judgment of dismissal. Rather, the case proceeded to summary judgement. *See Essman v. Gen. Accident Ins. Co. of America*, 961 S.W.2d 572, 574 (Tex.App.--San Antonio 1997, no pet.)("A *judgment of dismissal* entered by agreement of the parties in pursuance of a compromise or settlement of a controversy becomes a judgment on the merits." [Emphasis added]).[7]

COHOA also relies on the trial court's denial of a temporary injunction in 2003. It argues that in denying injunctive relief, the court necessarily found that no easement exists. The denial of a temporary injunction is not a final determination on the merits. *See Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 637 (Tex.App.--Houston [1st Dist.] 2010, pet. denied)("Texas law is clear that, generally, a trial court's ruling on a temporary injunction (or other interlocutory judgment) does not support the defense of res judicata.").

Next, the summary judgment motion asserts that an element of each of Plaintiffs' easement claims is necessity and, as a matter of law, there is no necessity. As noted above, necessity is not required for an easement by estoppel, but it is required for Plaintiffs' other two easement theories.

The motion states that a "curb cut was . . . placed to allow a driveway to be built connecting [Plaintiffs'] building . . . with Brandeis Road," that "Stefanyk land locked himself when he deeded the property on three sides of his building to the Villareals, thereby creating an implied easement

---

[7] COHOA suggests that the 2005 agreement required Plaintiffs to dismiss this suit. The agreement is set forth in a pre-printed, fill-in-the-blanks form provided by the mediator. The pre-printed statement that the parties would "execute and file an Agreed Order dismissing all claims" is crossed out. The handwritten portion of the agreement states that if Phase IV was annexed within ninety days, certain obligations would arise, including, "[t]he parties will dismiss all claims against each other and enter into mutual releases."

13

across the Villareals' land," that Plaintiffs have "another way off [their] property through neighboring property to the east and a railroad easement to the south," and that plaintiffs "do not have any need to drive onto the vacant land as there has been no construction in ten years."[8]   None of COHOA's summary judgment evidence specifically supports these assertions, but two items of evidence are arguably related to the assertions.

The first is a letter from COHOA's attorney, advising Plaintiffs that COHOA "recognizes the implied easement held by the owners of Phase IV over that narrow strip of land owned by [COHOA] separating Phase IV from Brandeis."   The second is the affidavit of Matthew Lynch, who has been COHOA's property manager since 2003.   The affidavit states:

> The COHOA has granted an easement across the narrow strip of land between the Villareals' property and Brandeis which is owned by the COHOA. The COHOA has continually advised [the parties] of the grant to use that easement by letters from our attorney.   In fact, before any necessity to use the adjacent land arose that entrance was chosen as the way in which Stefanyk should access his property unless and until the COHOA voted in favor of annexation of his property.

On appeal, COHOA argues that Lynch's affidavit demonstrates that it is not necessary for Plaintiffs to use the common entrance and road that serve Phases I, II, and III, because it has granted Plaintiffs an alternative easement.   COHOA states, "Assuming *arguendo* that Appellants ever had a necessity to use COHOA's private gate and drive, the record establishes that the necessity was extinguished upon creation of the alternate entrance."   As we have already explained, necessity is initially determined at the time of severance and there is no requirement that the necessity continue after severance for an easement by prior use.   *See Seber*, 350 S.W.3d at 649-50; *Ingham*, 351 S.W.3d at 101; *Holden*, 929 S.W.2d at 129.   Although an easement by

---

[8] The portion of the motion concerning necessity focuses more on the Villareals' claims than those of Plaintiffs.   We will not address any argument directed only to the Villareals.

14

necessity terminates when the necessity ceases, *Seber*, 350 S.W.3d at 649, this does not mean that the grantor has the authority to pick and choose which route the grantee can use.   Once the location of an easement by necessity is established, it cannot be changed without the consent of both parties.   *Samuelson v. Alvarado*, 847 S.W.2d 319, 323 (Tex.App.--El Paso 1993, no writ); *Sisco v. Hereford*, 694 S.W.2d 3, 7-8 (Tex.App.--San Antonio 1984, writ ref'd n.r.e.); *Meredith v. Eddy*, 616 S.W.2d 235, 240 (Tex.Civ.App.--Houston [1st Dist.] 1981, no writ).   Accordingly, COHOA's offer of an alternative easement does not negate Plaintiffs' right to any existing implied easement.[9]

Last, the summary judgment motion asserts that Plaintiffs cannot prevail on their easement-by-estoppel claim.   The motion states that Plaintiffs cannot show that they "took any action in reliance on a promise from Covington Oaks."   To obtain a traditional summary judgment, COHOA was required to negate the elements of representation and reliance as a matter of law; it cannot shift the burden to Plaintiffs.   *See Arellano*, 334 S.W.3d at 330.

The motion also states, "Any improvements were done as a condition to contractual obligation of the parties because COHOA always disputed Stefanyk and S&G's right to an easement."   The motion does not cite any evidence of this, but on appeal, COHOA relies on Lynch's affidavit.   Indeed, Lynch did aver that "COHOA has always disputed the right of owners of the adjacent property to use the private road, private gate and amenities of the COHOA."   This averment does not conclusively disprove an easement by estoppel in light of the 1995 agreement

_____

[9] COHOA also argues on appeal that Lynch's affidavit conclusively negated the element of continuous use, which is required for an easement by prior use.   However, COHOA did not include this ground in the summary judgment motion, and even if it had been included, Lynch's affidavit does not refer to the relevant time period, which was the time of severance.

and Garza's affidavit.   The 1995 settlement agreement contemplated that Stefanyk Development would build on Phase IV and that when construction was complete, Stefanyk Development and Phase IV residents could use the common entrance.   The affidavit states that a building was constructed in reliance on the right to use the common entrance and that COHOA did not formally indicate an unwillingness to allow Plaintiffs and their tenants to use the common entrance until December 2001.

Plaintiffs' third issue is sustained to the extent that it challenges the granting of a traditional summary judgment on the easement claims.

### *Contract Claim*

Plaintiffs contend that the 2005 settlement agreement obligated COHOA to attempt to have Phase IV annexed by its members.   They allege that COHOA breached this obligation by intentionally refusing to solicit the required votes.   COHOA sought a traditional summary judgment on the ground that the agreement was performed.[10]

The 2005 agreement states that Stefanyk Development would pay COHOA $15,000 within ten days.   It then states, "If Phase IV is annexed by the members of Covington Oaks Condominium Owners Association on [or] before 90 days from the date of this agreement then" Villareal would undertake various actions and the case would be dismissed.   By its express terms, this language did not require COHOA to recommend Phase IV's annexation or even to submit the annexation for a vote.   Nevertheless, COHOA has conceded that the agreement "requires . . . that COHOA submit the annexation of Phase IV to a vote of the homeowners."   COHOA established

---

[10] COHOA also asserted several no-evidence grounds pertaining to this allegation, but we find it easier to dispose of the issue by reference to traditional summary judgment principles.

that it met this requirement through its attorney's letter to Plaintiffs and the Villareals. That letter states that "three rounds of balloting for the proposed annexation of Phase IV have failed to attain the required percentage of approval of the membership. The annexation vote has failed." Moreover, Lynch's affidavit states that the vote was conducted in accordance with COHOA's restrictive covenants and that COHOA "acted in good faith to obtain a vote from every homeowner." Specifically, COHOA sent information to all of the homeowners concerning the annexation and recommended that they vote in favor of annexation. Balloting occurred at a June 2005 meeting. Ballots were also sent on two other occasions to ensure that every homeowner received a ballot and had the opportunity to vote.

In an attempt to counter this evidence, Plaintiffs rely on the minutes of a July 26, 2005 meeting of COHOA's board of managers. The minutes state:

> The Board reviewed the results of the current votes in regards to the annexation of Phase IV. With only 42 of 68 homeowners, or 62%, having cast their votes, the results are 36 homeowners, or 53%, voting in favor of annexation while the remaining 47% have either not voted or voted to not annex Phase IV. The requirement to annex Phase IV is 67%. The Board's frustration with the owners of Phase IV for not addressing repairing the fence, not providing a building inspection, as well as other items, has prompted them to not proceed any further with the annexation of Phase IV. The Board approved to pursue further legal recourse in order to isolate Phase IV from the rest of the complex. The Board approved the gates be closed as soon as possible, an agreement in regards to future utility easement be written, and all ties wit [sic] the owners of Phase IV be eliminated.

The minutes show that COHOA decided not to proceed further when 36 out of 42 (or 85%) of the voting members voted in favor of annexation. Plaintiff contends that this creates a fact issue as to whether COHOA performed its obligation to obtain a vote. We disagree. Nothing in the agreement suggests that COHOA had a duty to continue balloting *ad infinitum*. Rather, the

17

vote was supposed to be accomplished within ninety days.

Plaintiffs' third issue is overruled to the extent that it challenges the granting of a traditional summary judgment on the contract claim. Because COHOA established its entitlement to summary judgment on a traditional ground, we find it unnecessary to address Plaintiffs' second issue, which challenges the no-evidence summary judgment on the contract claim.

**Conclusion**

For the reasons stated above, the summary judgment is reversed as to Plaintiffs' easement claims, and the cause is remanded to the trial court for further proceedings concerning those claims. In all other respects, the summary judgment is affirmed.

February 1, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

18