COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| EDDIE LERMA, | § | No. 08-12-00105-CV |
| Appellant, | § | Appeal from the |
| v. | § | 243rd District Court |
| BORDER DEMOLITION & ENVIRONMENTAL, INC., | § | of El Paso County, Texas |
| | § | (TC# 2008-4555) |
| Appellee. | § | |

## O P I N I O N

Appellant Eddie Lerma, challenges a jury verdict and subsequent judgment holding him liable to Appellee Border Demolition & Environmental, Inc. ("Border Demolition") for breach of an oral demolition contract and attorneys' fees. We affirm.

### BACKGROUND

#### *Factual History*

On May 28, 2008, the City of El Paso condemned a house and detached garage located at 7429 Rose Lane Circle in El Paso's Lower Valley ("the Property"), finding that the structures were unsafe urban nuisances; unfit for human habitation or use; not in compliance with building codes; and hazardous to the public health, safety, and welfare. The City ordered Teresa Corral

Lerma, Appellant's wife and the listed holder of the Property's deed,[1] to demolish the structures within thirty days or else the City would demolish them and assess costs to her.

Corral Lerma filed an appeal suit against the City to have that order reversed.[2] She testified that although no one had resided in the house for years, she did not want the Property structures to be demolished. However, she would have abided by the City's ruling if the court sustained it on appeal. Appellant acted as her attorney in the court case but at the time was not aware of his wife's strong desire to keep the house and the garage because she never told him about her wishes. Appellant testified that he personally had wanted the house and garage to be demolished for many years prior to its condemnation.

Following receipt of the condemnation order and while Corral Lerma's suit against the City was pending, Appellant sought out potential demolition companies, purportedly at the behest of his wife. A friend of Appellant placed him into contact with Border Demolition. Company president Raul Solis testified that although Border Demolition ordinarily performs commercial demolitions and not residential demolitions, Appellant's friend, who was also Solis' friend, introduced Appellant to Solis and recommended Solis for the job. Solis offered to perform the home demolition for $11,000. The price did not include demolition of the garage. The parties agree that Solis sent Appellant a contract setting out those conditions via e-mail. What happened next is in dispute.

Appellant testified he received the written contract and showed it to his wife, Corral Lerma. She testified that she never approved the contract because it did not include demolition

---

[1] The parties dispute whether Teresa Corral Lerma owned the Property herself or whether she and Appellant owned the property jointly. A quitclaim deed shows that Appellant purported to convey his interest in the Property to his wife in 1986. A subsequent 1989 warranty deed also shows he purported to convey the Property to his wife. However, Border Demolition correctly points out that Appellant held himself out as a co-owner of the property several times, including in a letter to a city inspector and before El Paso City Council. As explained below, determining legal title to the Property is unnecessary to the resolution of this appeal.

[2] *Teresa Corral Lerma v. City of El Paso*, Cause No. 2008-2460.

2

of the garage, and because she wanted to see if she could get the price lowered. Appellant maintained that he and his wife never formally hired Border Demolition to perform the home demolition and they were still in negotiations at the time demolition began.

However, evidence adduced at trial shows that on July 7, 2008, Appellant moved to voluntarily dismiss Corral Lerma's suit against the City because he had claimed he hired Border Demolition to perform the work. The same day, the City issued a demolition order stating that the City would proceed with demolition of the buildings on July 31. The next day, July 8, Appellant sent a letter to the City Attorney's Office stating that Border Demolition would be seeking a permit to perform the demolition. Border Demolition later obtained the permit and subcontracted the home demolition work to M & F Trucking.

Solis testified that after several telephone discussions, Appellant called him and told him, "I need you to get started." Solis then asked why he had not received a signed copy of the written contract he had previously sent from Appellant. According to Solis, Appellant replied, "Mi'jo, I've already sent that to you." Border Demolition and M & F Trucking then proceeded with the demolition plans. Appellant denied ever telling Solis that he had sent him the contract or that he approved of its terms and insisted at trial that he and Solis were still in negotiations. Appellant also testified that he told Solis he was acting as Corral Lerma's agent and attorney. Solis disputed that contention and testified Appellant never told him he was representing anyone. Corral Lerma also testified that she never gave Appellant any authority to enter into the contract on her behalf.

Home demolition began on the morning of July 26, 2008. Appellant testified he was passing through the neighborhood when he saw that the house on the Property had been demolished. He did not tell the demolition workers to stop working. One of the subcontractor's

3

employees testified that instead, Appellant sat down in a folding chair under a tree across the street, drinking beer and watching the work unfold.

Following demolition of the house structure, Appellant contacted Border Demolition and asked why the garage had not been demolished as well. Solis informed Appellant that the price of the garage demolition was not included in the original contract. Solis testified that Appellant urged him to demolish the garage anyway, and stated, "[w]e'll work it out, mi'jo." Solis further testified that he believed that he and Appellant would settle the price of garage demolition after the work had been performed. Border Demolition then demolished the garage structure itself.

Border Demolition then sent Appellant an invoice for $15,155, which included the prices of both the home and garage demolition. Appellant refused to pay Border Demolition, alleging that the company unlawfully retained bricks and other building materials. Border Demolition then filed suit.

### *Procedural History*

This is the third time the parties at bar have taken this case to trial, with the first two attempts ending in mistrials. Following this trial, the jury returned a unanimous verdict in favor of Border Demolition, finding that Appellant engaged Border Demolition for demolition services at the Property, that Appellant failed to comply with the terms of the agreement, and Border Demolition provided $14,500 in total compensable work and that it suffered $11,000 in damages from Lerma's breach. The jury also awarded $75,000 in attorney's fees. This appeal followed.[3]

### DISCUSSION

In twelve issues, Appellant challenges the court's rulings on evidence, agent liability, the jury charge, damages, and attorney's fees. We group these issues by subject matter and address

---

[3] Appellant filed a notice of appeal in this Court on March 26, 2012. On December 7, 2012, we abated this appeal in light of a bankruptcy stay. On May 3, 2013, the Court reinstated this appeal.

them in turn.

# I.

## MITIGATION

### A.

### Evidence of Mitigation v. Evidence of Offer to Settle

In Issue One, Appellant contends the trial court abused its discretion by limiting evidence showing that Border Demolition failed to mitigate its damages by refusing to accept Appellant's settlement offers. Border Demolition counters that it had no duty to "mitigate" its damages by accepting a settlement offer conditioned on an implicit surrender of its claim. As such, the trial court did not abuse its discretion by refusing to admit settlement evidence that was otherwise inadmissible under the Rules of Evidence. We agree.

### *Standard of Review*

We review the trial court's evidentiary rulings for abuse of discretion. *Rhey v. Redic*, 408 S.W.3d 440, 457 (Tex.App.--El Paso 2013, no pet.). "A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to any guiding rules or principles." *Id*. We may only reverse a judgment based on an erroneous evidentiary ruling "if the error was harmful, i.e., it probably resulted in an improper judgment." *Id*.; *see also* TEX.R.APP.P. 44.1.

### *Analysis*

The central question here is whether Appellant's offer to let Border Demolition keep bricks from the home in exchange for a lower contract price constituted a mitigation attempt or a settlement offer. The distinction carries a legal significance. Mitigation is an affirmative defense, and a defendant is entitled to a mitigation instruction where he raises the issue at trial. *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 859 (Tex. 1999); *S & G Associated Developers,*

5

*L.L.C. v. Covington Oaks Condo. Owners Ass'n, Inc.*, 361 S.W.3d 210, 217 (Tex.App.--El Paso 2012, no pet.). However, "foreclosing a plaintiff from pursuing suit is not mitigation." *Gunn Infiniti,* 996 S.W.2d at 859. Instead, a defendant's offer only raises a fact question on mitigation where the offer is unconditional. *Id*. "If a defendant is truly offering to mitigate, the offer cannot implicitly or explicitly seek a release of the plaintiff's claims." *Id*. An offer that purports to resolve the dispute between the parties is not an unconditional mitigation offer, but an offer to settle, even where the offeror never explicitly demands release of the offeree's claims. *Id*.

Here, the evidence shows that Appellant offered to resolve the dispute between him and Border Demolition by letting it keep bricks and other building materials in exchange for a reduction in price on the contract. That constituted a settlement offer, since it created a quid pro quo situation purporting to resolve the dispute in its entirety. *Id*. at 860. TEX.R.EVID. 408 governs the admission of settlement offers. Settlement offers are inadmissible "to prove liability for or invalidity of the claim or its amount." *Id*. However, a settlement offer may be offered for other purposes. *See Barrett v. U.S. Brass Corp.*, 864 S.W.2d 606, 633 (Tex.App.--Houston [1st Dist.] 1993, writ granted), *rev'd in part on other grounds sub nom Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex. 1996).

Case law from our sister court makes clear that recasting a settlement offer as a mitigation attempt does not render the evidence admissible under other purposes grounds. In *Barrett*, the Houston First Court of Appeals held that a defendant who offered settlement evidence to show its "mitigation" efforts was actually offering the evidence in an attempt to defeat its own liability and prove the invalidity of the damages amount. *Id*. at 633-34. As such, Rule 408 prohibited its introduction.

We agree with this reasoning and find it applicable here. Appellant's purpose in offering

6

the settlement evidence was to prove the "invalidity of the claim or its amount." TEX.R.EVID. 408. Thus, introduction of settlement evidence was prohibited by rule, and the trial court did not err by excluding it.

Issue One is overruled.

**B.**

**Failure to Submit a Mitigation Charge**

In Issue Three, Appellant maintains that the trial court committed reversible error by failing to instruct the jury on mitigation. Border Demolition contends that Appellant failed to preserve charge error because he did not submit a proposed mitigation charge in writing as required by TEX.R.CIV.P. 278. We agree. Although Appellant objected orally to the trial court's failure to include a mitigation instruction in the jury charge, our review of Appellant's proposed jury instructions in the clerk's record shows that Appellant never included a written mitigation instruction. Because Appellant failed to tender a written request to instruct the jury on mitigation, error, if any, was waived. *See Castillo v. American Garment Finishers Corp.*, 965 S.W.2d 646, 649 (Tex.App.--El Paso 1998, no pet.). Even if error had not been waived, as we explained in the previous section, Appellant presented only evidence of settlement offers and never raised a genuine fact question on mitigation.

Issue Three is overruled.

**II.**

**PROPER PARTIES AND CAPACITY TO BE SUED**

In Issue Two, Appellant argues that he lacked capacity and standing to be sued[4] because

---

[4] Border Demolition notes that while Appellant purports to raise a standing challenge, the content of Appellant's brief raises no arguments related to standing. Instead, Appellant presents an argument only on his capacity to be sued as agent. We agree with this assessment. Although the two concepts are often conflated, standing and capacity are different. Standing is a component of subject matter jurisdiction which requires "a real controversy between the

7

he acted as his wife's agent, as evidenced by the fact that he did not own the Property, nor was he personally subject to the City of El Paso's condemnation order. Border Demolition counters that Appellant waived his agency arguments by failing to request specific jury findings on whether Appellant disclosed both his status as an agent and the identity of the principal on whose behalf he acted. We agree.

Agency is an affirmative defense against personal liability. *Kishor v. TXU Energy Retail Co., L.L.C.*, No. 05-10-01496-CV, 2011 WL 5857215, at *5 (Tex.App.--Dallas Nov. 17, 2011, no pet.)(mem. op.). The defendant who propounds this defense bears the burden of proving "that he disclosed he was acting in a representative capacity and that he disclosed the identity of his principal." *Id.* "The failure to request the submission of any element of an independent ground of defense results in waiver of that ground by the party who relies upon it." *Glendon Investments, Inc. v. Brooks*, 748 S.W.2d 465, 468 (Tex.App.--Houston [1st Dist.] 1988, writ denied).

Our review of the record shows that the charge contains an instruction that accurately sets out the law of agent liability but does not request specific findings on that issue. Indeed, Appellant never submitted any questions on the agency issue in his proposed jury charge instruction. To the contrary, Appellant orally objected to the *inclusion* of any agency language based on the fact that Border Demolition had not pleaded or proven agency. In his brief before this Court, Appellant continues to maintain that the trial court could not have held him liable on the contract until Border Demolition pleaded and proved agency. Appellant's assessment would be true if Appellant had been the principal in this scenario and not an agent. *See A & S Elec. Contractors, Inc. v. Fischer*, 622 S.W.2d 601, 603 (Tex.App.--Tyler 1981, no writ)(contractor

---

parties" that "will be actually determined by the judicial declaration sought." Capacity is the legal authority to sue or be sued, "regardless of whether [that party] has a justiciable interest in the controversy." *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex. 2005).

seeking to hold landlord liable on tenant's contract had to plead and prove that tenant acted as agent of landlord in making the contract). However, Appellant's position is that he acted as his wife's agent and is thus not liable on the contract. As such, his position is defensive, and Border Demolition did not need to disprove his agency. An agent's status is not presumed; it must be affirmatively proven and found by the jury. *Glendon Investments, Inc.*, 748 S.W.2d at 467. To establish his affirmative defense as an agent, Appellant was required to submit the disclosure questions in his proposed charged.

Because the record shows that Appellant never made an attempt to submit a question on whether he disclosed his status as an agent to the jury, his objections to being held personally liable on the contract are waived.

Issue Two is overruled.

### III.

### LEGAL AND FACTUAL SUFFICIENCY OF VERDICT

In Issues Four through Nine, Appellant attacks the legal and factual sufficiency of the damages awards for breach of contract, quantum meruit, sworn account, promise, acceptance, and estoppel claims. Before turning to the merits of Appellant's issues, we address Border Demolition's two objections raised under the Rules of Appellate Procedure.

### A.

### Appellee's Procedural Objections

### 1.

### *Waiver of Factual Sufficiency Challenges*

Border Demolition first claims Appellant failed to preserve his factual sufficiency points because although he properly raised the issue in a motion for new trial filed within 30 days of

judgment as required by TEX.R.CIV.P. 324(b)(2), he did not properly complete the filing until he paid the filing fee, which occurred more than 30 days after entry of judgment. As such, the motion was untimely, and while a trial court may consider and grant an untimely motion for new trial as an exercise of its plenary power, "[a] trial court's order overruling an untimely new trial motion cannot be the basis of appellate review, even if the trial court acts within its plenary power period." *Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003).

In support of its position, Border Demolition cites *Garza v. Garcia*, 137 S.W.3d 36 (Tex. 2004). In *Garza*, the Texas Supreme Court explained that a motion for new trial that is filed without a filing fee is deemed to have been conditionally filed. *Id.* at 37. A conditionally filed motion for new trial will reset appellate timetables in the same manner as a fully consummated motion for new trial. *Id.* at 38. However, the Court also noted that unless the filing fee is timely paid, i.e. furnished within 30 days of judgment, the trial court may review the complaints contained in the motion for new trial, but is not required to do so. *Id.* The Court further noted that because the appellee had never paid the filing fee, her factual sufficiency claims were never properly before the trial court and presented nothing for appellate review. *Id.*

The law in light of *Garza* and *Moritz* is clear: failure to timely furnish filing fees renders the motion for new trial untimely, and since "an untimely motion's only purpose is to guide the trial court in the exercise of its inherent plenary power[,]" *Moritz*, 121 S.W.3d at 718, it fails to preserve factual sufficiency error for our review.

Here, the record evidence shows that Appellant filed the motion for new trial on the twenty-ninth day after judgment. An invoice in the record shows three days after filing this motion, Appellant had yet to pay the filing fee in full. His failure to timely tender the fee rendered his entire motion untimely and preserves nothing for our review.

10

Appellant's factual sufficiency challenges to the verdict are waived in their entirety.

## 2.

### *Advisory Issues*

Border Demolition also claims that Issues Six through Nine pertaining to sworn account, promise, acceptance, and estoppel are not properly before this Court, since neither the jury verdict nor the trial court's judgment reference them.

We agree that Appellant's sworn account issue is not before this Court. The sworn account issue was pleaded, but it was never submitted to the jury nor argued at trial. As such, we decline to address Issue Six as advisory. We disagree that the pleaded issues of promise and acceptance are not technically before this Court merely because the jury charge did not break down the breach of contract claim by element. However, they are subsumed by Issue Four, the merits of which we discuss below. Likewise, the estoppel issued is subsumed in the quantum meruit verdict, which we also address below.

In sum, Issue Six is overruled as advisory. We decline to address Issues Seven, Eight, and Nine separately because they are subsumed within Issues Four and Five, and duplicative discussion of these issues is unnecessary to the resolution of this appeal. *See* TEX.R.APP.P. 47.1.

## B.

### Legal Sufficiency of Jury Findings

Having dealt with Appellee's procedural points, we turn to Appellant's remaining substantive points. In Issue Four, Appellant contends the evidence underpinning the breach of contract verdict is legally insufficient. In Issue Five, Appellant also alleges that the quantum meruit verdict is legally insufficient.

### *Standard of Review*

11

On legal sufficiency review, we review all record evidence in the light most favorable to the verdict, indulging "every reasonable inference" in the verdict's favor. *Marincasiu v. Drilling*, 441 S.W.3d 551, 557 (Tex.App.--El Paso 2014, pet. denied). We sustain an appellant's legal sufficiency challenge where (1) the record reveals the complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *City of El Paso v. Parsons*, 353 S.W.3d 215, 225 (Tex.App.--El Paso 2011, no pet.). "More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id*.

## 1.

### *Breach of Contract*

The elements of a valid contract are (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) a communication that each party consented to the terms of the contract, (5) execution and delivery of the contract with intent it become mutual and binding on both parties, and (6) consideration. *Expro Americas, L.L.C. v. Sanguine Gas Exploration, L.L.C.*, 351 S.W.3d 915, 920 (Tex.App.--Houston [14th Dist.] 2011, pet. denied). In Issue Four, Appellant advances two arguments against the legal sufficiency of the jury's contract verdict, both pertaining to the meeting of the minds element.

First, Appellant argues that the absence of his signature on the written contract shows that there was no meeting of the minds and thus, no binding contract could have ever formed. We disagree. "Generally, parties can indicate their intent to create a mutually binding contract by signing the contract documents." *Thomas J. Sibley, P.C. v. Brentwood Inv. Dev. Co., L.P.*, 356

12

S.W.3d 659, 663 (Tex.App.--El Paso 2011, pet. denied). "However, the absence of a party's signature does not necessarily destroy an otherwise valid contract." *Id*. A written contract may be accepted orally if oral acceptance is not foreclosed by the terms of the offer. *See Principal Life Ins. Co. v. Revalen Dev., L.L.C.*, 358 S.W.3d 451, 455 (Tex.App.--Dallas 2012, pet. denied)("If the parties have definitely agreed to undertake certain obligations, they have concluded the contract, even though the contemplated formal writing is never drawn up and executed."). Thus, the absence of Appellant's signature on the proposed contract is not dispositive on the issue of acceptance or meeting of the minds.

Appellant argues alternatively that even if an oral contract could have formed based on the written contract, one did not form under these circumstances because the contract's terms are not defined, clear, or unequivocally stated. For instance, Appellant wanted the contract to include not only the house, but the garage as well. Because the parties disagreed about the scope and the nature of work to be done, that meant negotiations were still underway, and there was no legally sufficient evidence to support the jury's implicit finding that a contract formed.

We disagree. Although Appellant testified that he did not intend to form a contract that excluded demolition of the garage, "[t]he determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *Baroid Equipment, Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 17 (Tex.App.--Houston [1st Dist.] 2005, pet. denied). "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications." *Id*. Here, Solis testified that Appellant told him he had received the written contract and had already sent that back to Solis. Assuming as we must that the jury believed Solis' testimony, Appellant's request for performance, his

13

statement that he returned the contract to Solis, and his failure to voice any objection to the written contract would objectively indicate to a reasonable person that Appellant had accepted Solis' terms. Our review of the written contract Appellant purported to accept clearly shows that the scope of Border Demolition's work was limited to the house, and that the price for that work was $11,000.

More than a scintilla of evidence existed to show that Appellant, through objective words and actions, accepted the contract as proposed by Solis. As such, his legal sufficiency challenge to this part of the verdict is without merit.

Issue Four is overruled.

## 2.

### *Quantum Meruit*

In order to recover on a quantum meruit claim, the plaintiff must prove that:

(1) valuable services were rendered or materials were furnished;
(2) for the person to be charged;
(3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and
(4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*See Insignia Capital Advisors, Inc. v. Stockbridge Corp.*, No. 08-01-00119-CV, 2002 WL 1038805, at *2 (Tex.App.--El Paso May 23, 2002, pet. denied)(not designated for publication). In Issue Five, Appellant contends that Border Demolition provided no evidence at trial that the work it performed was done for Appellant's benefit. Instead, the true beneficiary of the work was Appellant's wife, who was not a party to this suit. Border Demolition contests that assertion, arguing that Appellant's apparent authority and his personal desire to see the house and the garage demolished provide the necessary connection to establish quantum meruit

14

liability.

Both parties point to *McFarland v. Sanders*, 932 S.W.2d 640 (Tex.App.--Tyler 1996, no writ), in support of their arguments. In *McFarland*, the operator of a farm entered into an oral installment contract with a construction company to perform certain improvements to the land. After the construction company partially completed work, a dispute arose over scope of work and contract price. The farm operator ultimately refused to make the remainder of the payments. *Id*. at 642-43. The constructor then filed suit for breach of contract against the farm operator and for quantum meruit against both the operator and the actual farm owner. The court overturned the quantum meruit verdict as to the farm owner, finding no evidence that the constructor performed the work for the farm owner's benefit. *Id*. at 643-44. However, the court upheld the quantum meruit verdict as against the farm operator, finding that an oral agreement between the operator and the construction company existed. *Id*. at 645. The operator breached the installment contract before it was fully consummated by refusing to pay and that the construction company had performed some of the work pursuant to the terms of the contract. *Id*.

*McFarland* militates in favor of Border Demolition. Here, the fact that Appellant's wife purportedly owned the property and was subject to the City's condemnation order is not strictly relevant to the issue of whether Appellant may be held liable under quantum meruit. More than a scintilla of evidence exists to show that Appellant held himself out as a co-owner of the house. Further, as with the farm operator in *McFarland*, Appellant was the party that engaged Border Demolition to perform the work and represented that he and the company would work out any price discrepancies once the job was done. As such, there is legally sufficient evidence that he held himself out as the "person to be charged" sufficient to trigger quantum meruit liability. Since Appellant waived any agency defenses, our analysis ends there.

15

Issue Five is overruled.

## IV.

### ATTORNEY'S FEES ISSUES

In his final issues, Appellant challenges the attorney's fee award on three grounds. First, in Issue Ten, Appellant contends that the evidence supporting the attorney's fee award is legally and factually insufficient. Second, in Issue Eleven, Appellant maintains that the attorney's fee award is excessive and not reasonably related to the work performed. Finally, in Issue Twelve, Appellant argues that the trial court erred by failing to give him the opportunity to address Border Demolition's attorney's fees evidence relating to two prior mistrials. We conclude these three points are without merit.

### A.

### Legal and Factual Sufficiency of Attorney's Fee Award

A challenge to attorney's fees as being excessive is merely a way of recasting a factual sufficiency challenge to the award. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). Thus, Appellant propounds the same point in Issue Eleven he advanced in Issue Ten. We address the two issues jointly.

#### *Preservation of Error*

As a threshold matter, Border Demolition argues that Appellant failed to preserve any legal and factual sufficiency challenges to the attorney's fees award. As we previously discussed, to preserve a factual sufficiency complaint for appellate review, or to raise a complaint about excessive damages, the movant must raise the points in a timely motion for new trial. Appellant's motion for new trial was untimely, thereby waiving any factual sufficiency complaints.

16

To preserve legal sufficiency in the trial court, the appellant must make a specific complaint in (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *Southern v. Goetting*, 353 S.W.3d 295, 298 (Tex.App.--El Paso 2011, pet. denied). Border Demolition contends that Appellant failed to raise the attorney's fee point in its two motions for directed verdict, its objections to the jury charge, or in its motion for new trial. In reviewing the record, we cannot find any specific objection to the legal sufficiency of the attorney's fees at any of those stages of litigation. As such, error is unpreserved here, and we need not reach the merits.

Issues Ten and Eleven are overruled.

**B.**

**Opportunity to Rebut Evidence of Previous Mistrials**

Finally, in Issue Twelve, Appellant argues the trial court abused its discretion by failing to provide him with the opportunity to address the reason why two previous mistrials appeared in the attorney's fee schedule submitted to the jury. As such, Appellant did not have the opportunity to show that Border Demolition's attorney's fees were unreasonable.[5]

As we previously noted, evidentiary rulings are committed to the sound discretion of the trial court. *Rhey*, 408 S.W.3d at 457. We will not overturn a verdict based on an evidentiary violation unless the appellant can show that the error was harmful. *Id*.

It is undisputed that the parties have gone to trial twice before in this case, and that both previous trials ended in mistrials. Counsel for Border Demolition presented attorney's fees evidence that excluded time spent at the first trial, but included time spent at the second trial and

---

[5] Border Demolition asks us to find that Appellant's arguments on this point have been waived for lack of adequate briefing. We decline to do so here.

the preparation time that went into both previous trials. At the trial relevant to this appeal, the trial court implemented a motion in limine apparently preventing the parties from addressing the reasons for the two previous mistrials. The precise limine order does not appear in the record, nor does Appellant address precisely which evidentiary ruling he is addressing. In any event, the trial court prevented Appellant from cross-examining Border Demolition's expert, Carl Green, on issues related to the mistrials. We assume this is the ruling of which Appellant complains.

On a bill of review, Appellant's counsel questioned Green on the issues of whether an attorney may cause a mistrial as part of trial strategy and whether clients have to pay their attorneys when a case ends in a mistrial. Appellant maintains that the trial court erred by preventing the jury from hearing this testimony.

However, the trial court also permitted Appellant to call witnesses to testify on the reasonableness of fees related to the second trial. It noted during the bill of review that Green's testimony on the causes of the mistrial was irrelevant because Green was not a fact witness and could not testify as to the reasons of the previous mistrials. Further, while the trial court forbade Appellant from discussing the reasons for the mistrial, it allowed Appellant to bring up the fact that the trial judge in the second case recused herself. Taking all these factors in the aggregate, we cannot say that the trial court abused its discretion in finding either that the evidence was not relevant under TEX.R.EVID. 403, or, alternatively, that the evidence would not result in undue delay or confusion to the jury under TEX.R.EVID. 404.

Issue Twelve is overruled.

## CONCLUSION

Having disposed of all of Appellant's issues, we conclude this appeal is without merit. The judgment of the trial court is affirmed.

18

YVONNE T. RODRIGUEZ, Justice

February 20, 2015

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating